**Walter J. WEAVER, Appellant,**

v.

**O'MEARA MOTOR COMPANY, a Colorado corporation, Appellee.**

**No. 961.**

Supreme Court of Alaska.

March 21, 1969.

---

6. SLA 1967, ch. 135, § 1.

James K. Tallman, Anchorage, for appellant.

Eric E. Wohlforth, McGrath & Wohlforth, James J. Delaney, Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND, and RABINOWITZ, JJ.

RABINOWITZ, Justice.

This litigation arises out of a 1965 sale by O'Meara Motor Company, a Ford dealer with offices in Denver, Colorado, to appellant of four dump trucks and one pickup truck. The sale of the vehicles was made pursuant to retail installment contracts which provided for repossession, without demand or process of law, upon default in payment.[1] After repossessing the dump trucks in July 1966, appellee sold them, and then sued appellant for deficiency judgments.[2] Appellant counterclaimed for conversion of the four dump trucks seeking damages flowing from appellant's improper sale of the four vehicles. Appellant further counterclaimed for personal injuries sustained as a result of an assault and battery committed by appellee's agent in attempting to repossess the pickup truck from appellant's home. The issues were tried to a jury which returned verdicts in appellee's favor on the dump trucks—deficiency judgment issues; in appellee's favor for the balance owed on the pickup truck contract; in appellee's favor on both appellant's counterclaims for wrongful repossession of the dump trucks and upon his counterclaim for personal injuries. The jury also returned a verdict in favor of appellant for $7,160.06 on his counterclaim based upon appellee's failure to give proper notice of resale of the dump trucks upon their repossession. Thereafter, appellee was granted a judgment n. o. v. on this verdict in favor of appellant for the sum of $7,160.06. This appeal followed.

One of the principal grounds urged by appellant for reversal is that the trial court erred in holding that appellee, a foreign corporation, could institute and maintain an action in the courts of the State of Alaska. Essentially, appellant's argument here is that appellee had in fact transacted business within the State of Alaska, and since appellee had not complied with the requirements of AS 10.05.690, it was barred from maintaining the present action. AS 10.05.690 reads as follows:

> *Transacting business without certificate of authority as a bar to right to sue.*

---

1. Appellant and one Jack Wilson signed the retail installment contract pertaining to the four dump trucks. Appellant alone signed the contract covering the pickup truck.

2. Appellee attempted to gain repossession of the pickup truck but was unsuccessful. As to this vehicle, appellee sued for its return or in the alternative for its value.

A foreign corporation transacting business in the state without a certificate of authority may not maintain an action, suit or proceeding in a court of the state until it obtains a certificate of authority. A successor or assignee of a foreign corporation transacting business without a certificate of authority may not maintain an action, suit or proceeding in a court of the state on a right, claim or demand arising out of the transaction of business by the corporation in the state until a certificate of authority is obtained by the corporation or by a corporation which has acquired all or substantially all of its assets.

Appellee argues that its activities fall within the provisions of AS 10.05.600(8) and therefore AS 10.05.690 is inapplicable.[3] In regard to foreign corporations, AS 10.-05.600(8) provides the following concerning activities which are excluded from regulation:

> Without excluding other activities which may not constitute transacting business in the state, a foreign corporation does not transact business in the state by carrying on any of the following activities:
>
> \* \* \* \* \* \*
>
> (8) securing or collecting debts, or enforcing rights in property securing debts \* \* \*.

■ Appellee contends that all the contacts it had with Alaska were for the purpose of securing debts or enforcing

rights in property securing debts. In this regard, appellee presented evidence that it was a Colorado corporation engaged in the sale of Ford automotive products; that its business is conducted primarily in the Denver, Colorado area, and that most of its business is within the State of Colorado; and that it has no office or salesman in other parts of the country. On the basis of the foregoing and the provisions of AS 10.05.600(8), we conclude that appellee was not transacting business within the intendment of AS 10.05.690, and was therefore not barred from instituting and maintaining, in the courts of this state, its causes of action in the case at bar.[4]

Appellant's second principal contention in this appeal is that the lower court erred in denying his motion for a directed verdict. This motion was urged on the ground that appellee had failed to prove reassignments to itself of the vendor's interests, under the retail installment contracts, in the vehicles in question.[5] Since appellee failed to prove that reassignments of the vendor's interests were made prior to repossession of the dump trucks, and prior to this institution of this suit, appellant argues that appellee was not the real party in interest and could not institute and maintain the case at bar. Appellant bases his real party in interest argument mainly upon the provisions of AS 28.10.560 which read in part:

> In a civil or criminal proceeding when the title or right to possession of a vehicle is involved, the record of registration and certificates of title as they ap-

---

3. In its second amended complaint, appellee alleged in part that it was "a Colorado corporation not transacting business in the State of Alaska, and at all times mentioned herein was not transacting business in the State of Alaska within the meaning of AS 10.05.600." These allegations were denied by appellant.

5. *Compare* Stephenson v. Duriron Co., 401 P.2d 423 (Alaska 1965) and Northern Supply Inc. v. Curtiss-Wright Corp., 397 P.2d 1013, 1015 (Alaska 1965), where it was said in part:
 The activities mentioned in AS 10.05.-600 pertain only to the transaction of business as it relates to the power of

the state to require the foreign corporation to obtain a certificate of authority to transact business in the state. AS 10.05.600 does not pertain to those activities which may subject a foreign corporation to the jurisdiction of our courts under AS 10.05.642.

5. In September 1965, appellee had assigned its interests in the subject contracts to Associates Discount Corp. of Denver, Colorado. The certificates of title to the vehicles in question showed Weaver and Wilson as owners and the only other party in interest was Associates Discount Corp. who was shown as the lienholder.

pear in the files and records of the department are prima facie evidence of ownership or right to possession of the vehicle.[6]

Appellant further relies upon the decision of the Ohio Supreme Court in Mielke v. Leeberson[7] which appellant argues was decided under a statute similar to AS 28.-10.560. In *Mielke* the Ohio Supreme Court held that proof of title had to be shown by the certificate of title as required by their statute. We believe *Mielke* is distinguishable because of the significant differences between the provisions of AS 28.10.560 and the Ohio statute. Under the laws of Ohio it was provided in part that:

> No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this chapter.[8]

It is apparent that the Ohio statute requires proof of title or any interest in a motor vehicle to be evidenced by the certificate of title. On the other hand, AS 28.10.560 provides that the certificate of title to a motor vehicle constitutes prima facie evidence of the ownership, or right to possession, of the vehicle.[9] AS 28.10.560

does not preclude oral testimony as to the ownership, or right to possession, of a motor vehicle.

■ We, therefore, conclude that the trial court did not err in denying appellant's motion for directed verdict. Eugene O'Meara, appellee's vice president and secretary, testified that from July 1, 1966, appellee had an interest in the vehicles because it had obtained a reassignment.[10] We hold that this evidence was sufficient to justify the trial court's denial of appellant's motion for directed verdict. An additional reason for our upholding the trial court's ruling on appellant's motion for directed verdict is our conclusion that appellant waived the defense that appellee was not the real party in interest. Civil Rule 9(a) provides in part that:

> When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment * * *.

Appellee argues that the issue of reassignment of the vendor's interests in the retail installment contracts was brought to appellant's attention in appellee's pre-trial memorandum, as well as certain testimony which was received early in the trial.[11] Under these particular circumstances, we believe a waiver of the defense of real party in interest occurred. Applicable here is

---

6. The balance of the text of AS 28.10.560 reads:
 Proof of ownership, possession or right to possession of a vehicle shall be made by a copy of the record, certified by the department or by the original certificate of registration or certificate of title issued by the department.

7. 150 Ohio St. 528, 83 N.E.2d 209, 211, 7 A.L.R.2d 1342 (1948).

8. *Id.*

9. See Annot., 7 A.L.R.2d 1347, 1348 (1949), where it is stated in part:
 Ordinarily oral evidence of a party that he owns property, or proof of possession, when not rebutted, is sufficient to establish the requisite ownership to maintain an action for property damage.

 Most courts have accepted such evidence as sufficient to establish the plaintiff's ownership of a motor vehicle so as to enable him to maintain an action for damages thereto.

10. After all parties had completed the presentation of their respective cases, counsel for appellee moved to reopen appellee's case to present documentary evidence that appellee had received a reassignment from Associates Discount Corp. prior to the time it repossessed the dump trucks. The trial court ruled that appellee's motion was not timely.

11. In its pre-trial memorandum, appellee stated:
 On July 1, 1966, Associates Discount Corporation reassigned the two

our decision in Wilson v. Interior Airways, Inc.,[12] where it was said:

> Interior had notice before the trial had started that there had been a workmen's compensation award; and before the trial was over, knew that Wilson had accepted compensation under the award. With that knowledge it was incumbent upon Interior, if it had wished to challenge Wilson's right to maintain the action, to have moved to amend its answer to assert the defense of lack of capacity to sue by specific negative averment as required by Civ.R. 9(a). By failing to do this, the defense was waived.[13]

The third principal contention advanced by appellant in this appeal is that the trial court erred in granting a judgment n. o. v. as to the $7,160.06 verdict in appellant's favor arising out of appellee's failure to give proper notice of resale of the dump trucks upon their repossession.[14] In regard to this issue, the jury was in part instructed that if they found appellant was entitled to damages arising out of the failure of appellee to give him the notice required by AS 45.05.788(c) of the Uniform Commercial Code,

> then in determining the amount of damages you are instructed that the proper measure of damages is the difference between the true market value of the trucks at the time of the sale and the amount for which the trucks were sold.[15]

Where noncompliance with the notice of sale provision of AS 45.05.788(c) has been shown, the burden of proving that the market value of the collateral was re-

retail installment contracts between plaintiff O'Meara Motor Company and the defendants to O'Meara Motor Company. Plaintiff then instituted this suit and repossessed the four Ford dump trucks and unsuccessfully attempted to repossess the Ford pick-up truck.

In its pre-trial memorandum, appellee also requested that appellant concede the genuineness of the following documents:

(c) Assignment of retail installment contract from Associates Discount Corporation to O'Meara Motor Company dated July 1, 1966, and pertaining to a 1965 Ford pick-up truck.

(d) Assignment of retail installment contract from Associates Discount Corporation to O'Meara Motor Company and dated July 1, 1966.

12. 384 P.2d 956, 957 (Alaska 1963) (footnote omitted).

13. *See also* Smith v. Sellar, 371 P.2d 809 (Alaska 1962).

14. AS 45.05.788(c) provides in part:
Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of a public sale or reasonable notification of the time after which a private sale or other intended disposition is to be made shall be sent by the secured party to the debtor * * *.
AS 45.05.794(b) provides:
The fact that a better price could have been obtained by a sale at different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in a recognized market for it, if he sells at the price current in that market at the time of his sale, or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in a judicial proceeding or by a bona fide creditors' committee or representative of creditors shall conclusively be considered commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable.

15. The court further instructed the jury that:
If you find that Mr. Weaver and Mr. Wilson are entitled to damages for failure to receive notice as hereinabove provided, that will not affect the right of O'Meara Motor Company to receive a verdict on the amount of the indebtedness still due including costs of repossession, sale, and attorneys' fees as herein otherwise provided.

ceived at the sale is upon the secured party.[16] We hold that appellee's proof met this burden in that it established at trial that it received the best available current price for the four dump trucks after they were sold upon repossession and that the sale was made in a commercially reasonable manner.[17] Under the evidence adduced, we believe the trial judge could conclude that reasonable men could not find that appellant suffered any damages by virtue of appellee's failure to give the notice of resale required by AS 45.05.788(c).[18]

■ Appellant next argues the trial court erred in denying damages for loss of use of the dump trucks by virtue of appellee's conversion of them. Here appellant contends that upon appellee's failure to furnish him with the requisite notice of sale under AS 45.05.788(c), it was liable in damages for conversion of the trucks. We hold that the trial court correctly ruled that there was no conversion since appellee had the right to repossess the trucks under the terms of the retail installment contract and the provisions of AS 45.05.786.[19] The trial court properly instructed the jury as to the proper measure of damages attributable to appellee's default of AS 45.05.788(c).

Appellant next advances eight separate points for reversal of the judgment entered below. Although many of the specifications of error relating to these eight points are not in conformity with our Supreme Court Rule 11 and have not been adequately briefed, we have reviewed each claimed error and can ascertain no reason for disturbing the judgment which was entered below. We will briefly mention these claimed errors.

■ Appellant urges that the trial court erred in giving instruction number 16 because it assumed a reassignment to appellee. We find no error as the instruction does not assume a reassignment from Associates Discount Corporation to appellee. Appellant next points to the court's instruction number 17 contending that it was erroneous because it informed the jury that appellee had the right of repossession without notice to appellant. We find no error here as AS 45.05.786 does not require any notice to be given. Similarly, no notice of repossession was required under the terms of the retail installment contract. As to instruction number 17A, appellant contends that it was erroneous because it assumed a reassignment to appellee. This contention is answered by our holding that there was

---

16. Norton v. National Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538, 542 (1966).

17. Eugene O'Meara, appellee's vice president and secretary, testified he had received written appraisals from Alaskan appraisers which placed the value of the dump trucks between $7,500 and $8,500 each; that he thereafter obtained prices from sources in the states of Washington, Oregon, and California, all of which were higher than the appraisal figures he obtained in Alaska. O'Meara further testified that he had received only one firm offer in Alaska (where the trucks were repossessed) and that this was for $8,000 per dump truck. In September 1906, the four trucks were sold to a Seattle firm for a total of $38,000. According to O'Meara, this was the best offer he had received. Irene Bartee, an accountant for an Anchorage construction company, gave testimony to the effect that she solicited, on appellee's be-

half, offers for the dump trucks in Alaska without success. Cecil Webster testified that the only offer he could obtain in Alaska was for $32,000 with a down payment of $4,000 and the balance was over a two-year period without interest. (Note, this is the same Alaskan offer that O'Meara related.) Additionally, the deposition testimony of John E. Eswein and Lonnie Hall was offered by appellee. Eswein appraised the dump trucks at $7,500 each, while Hall reached an appraisal figure of $8,500 for each dump truck.

18. Snipes v. March, 378 P.2d 827, 828 (Alaska 1963).

19. AS 45.05.786 provides in part:
Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

sufficient evidence of a reassignment to appellee prior to its repossession of the dump trucks and by our holding that appellee had waived the real party in interest defense.

 In regard to appellant's counterclaim for personal injuries arising out of an assault and battery allegedly committed during appellee's repossession of the pickup truck, appellant argues that the trial court's instruction number 32 was erroneous. There the court informed the jury that appellant's pre-existing cancerous condition was not worsened by the alleged assault and battery committed by Wes Super, appellee's agent. This point is not argued in appellant's brief, and therefore will not be considered in this appeal. The trial court also ruled that Super acted in self-defense during his attempted repossession of the pickup truck. This asserted error has not been briefed by appellant, and will therefore not be considered. In regard to the assault and battery issue, appellant also urges as error the court's refusal to admit into evidence a racial slur Super uttered after the alleged assault and battery had been completed, and the police had arrived at the scene of the abortive repossession of the pickup truck. We find no error in the court's ruling here nor can we discern any prejudice to appellant's case because of its exclusion. Lastly, on the assault and battery issue, it is urged that the trial court erred in not granting judgment n. o. v. as to appellant's counterclaim for personal injuries. We find no error because the evidence was highly conflicting and appellee had the right to repossess the collateral. Any explication of the meaning of "without breach of the peace," as that term is employed in AS 45.05.786, should be rendered only after the question has been fully briefed and argued.

Appellant's final point is that the court erred in refusing to give his proposed instruction number 6 which pertained to the award of damages for mental suffering caused by Super's assault and battery. This issue has not been adequately briefed. In particular, appellant has not shown why the issue was not rendered moot by the jury's finding in appellee's favor on the assault and battery issue.

Affirmed.