**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff,**

v.

**Romaine F. CLARK et al., Defendants.**

**Civ. No. A–161–72.**

United States District Court,
D. Alaska.

June 26, 1975.

Roger F. Holmes, Biss & Holmes, Anchorage, Alaska, for plaintiff.

John Anthony Smith, Gruenberg, Willard & Smith, Kenneth D. Jensen, Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

von der HEYDT, Chief Judge.

This cause comes before the court upon the renewed motion of defendants, Garfield, Karrer and Jolly, for summary judgment declaring that the automobile insurance policy issued by plaintiff to Romaine F. Clark provides coverage for an accident that occurred on June 17, 1972, in which the movants were injured.

This is a declaratory action brought by State Farm Mutual Automobile Insurance Company (hereinafter State Farm) in order to determine whether its policy, number 038–918–006–02D [1], provides coverage to Romaine F. Clark. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Under the mandate of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court must apply the law of the forum state. Unfortunately, the Alaska Supreme Court has yet to address the precise issue raised in the instant case. That issue concerns the affect that AS 28.10.370 [2] has upon the coverage afforded the purchaser of an automobile under the newly acquired automobile clause [3] of his auto-

1. The actual policy filed in this action appears to have expired by its terms prior to the accident that gave rise to the instant litigation. Nevertheless, the depositions on file show that the named insured had continued to pay premiums on the policy up until the time of the accident. No party has raised this issue. Presumably, the policy was continued in force by a renewal that does not appear of record.

2. A.S. 28.10.370 provides in relevant part, "Until the department issues a new certificate of registration and certificate of ownership, delivery of a vehicle required to be registered under this chapter shall be deemed not to have been made and title shall be deemed not to have passed, and the intended transfer shall be deemed incomplete and not valid or effective for any purpose."

3. The relevant portions of the policy in question are as follows:
COVERAGE A—BODILY INJURY LIABILITY
COVERAGE B—PROPERTY DAMAGE LIABILITY
To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of
(A) *bodily injury* sustained by other *persons*, and
(B) *property damage*,
caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the *owned motor vehicle*.
USE OF NON–OWNED AUTOMOBILES
If the named insured is a *person* or *persons*, and if during the policy period such named insured owns a motor vehicle covered by this policy and classified as "pleasure and business", such insurance as is afforded by this

policy with respect to the *owned motor vehicle* under:
(1) coverages A and B applies to the use of a *non-owned automobile* by:
(a) the first *person* named in the declarations or, . . . Newly Acquired Automobile—means an *automobile*, ownership of which is acquired by the named insured or his spouse, if a *resident* of the same household, if
(1) it replaces an *automobile* owned by either and covered by this policy, or the company insures all *automobiles* owned by the named insured and such spouse on the date of its delivery, and
(2) PROVIDED THAT NO INSURANCE SHALL BE APPLICABLE TO SUCH *NEWLY ACQUIRED AUTOMOBILE* UNLESS AS A CONDITION PRECEDENT THE NAMED INSURED WITHIN 30 DAYS FOLLOWING SUCH DELIVERY DATE APPLIES TO THE COMPANY FOR INSURANCE ON SUCH *NEWLY ACQUIRED AUTOMOBILE*. If more than one policy issued by the company could be applied to such *automobile* the named insured shall elect which policy shall apply. The named insured shall pay any additional premium required because of the application of the insurance to such *newly acquired automobile*. Non-Owned Automobile—means an *automobile*, *trailer* or detachable unit, not
(1) owned by,
(2) registered in the name of, or
(3) furnished or available for the frequent or regular use of
the named insured, his spouse, or any relative of either *residing* in the same household, other than a *temporary substitute* automobile.

mobile liability policy where the certificate of title for such automobile is issued subsequent to an accident for which the named insured is potentially liable.

Many of the facts in this litigation are hotly disputed. Nevertheless, the court must reach the legal issue involved in order to determine whether the disputed facts are material to the resolution of this action. For reasons that will subsequently appear, the court finds that the factual disputes are material and must therefore deny defendants' motion for summary judgment.

Romaine F. Clark was the named insured under an automobile policy issued by State Farm that provided liability coverage for the named insured when driving the listed automobile, a 1969 Falcon. Additionally, the policy provides coverage for the named insured when driving a "non-owned automobile" and an "owned automobile", provided certain conditions are met.[4] It appears probable that sometime in April or May of 1972 the named insured purchased a 1964 Chevrolet Chevelle from an Irvin

Earles. Thereafter, Earles cancelled his insurance on the Chevelle. The named insured did not immediately notify State Farm as to his acquisition of an additional automobile. On June 1, 1972, the named insured filed an application for a certificate of registration and a certificate of title on his newly acquired automobile. On June 17, 1972, a single car accident occurred while the named insured was driving the newly acquired Chevelle. Several of the passengers in the car were injured. Subsequently, on June 19, 1972, the named insured notified State Farm of the accident and of the fact that he had acquired the Chevelle. Thereafter, the Alaska Department of Revenue issued Mr. Clark new certificates of title and registration.[5] The record does not reflect whether the named insured was issued a temporary permit to operate the vehicle pending action on his application for registration and new certificate of title. AS 28.10.290.[6]

Broadly stated, the legal question that must be resolved is the applicability of the Alaska Motor Vehicle Act, AS 28.-10.010 *et seq.*,[7] to the interpretation of

---

Owned Motor Vehicle—means the motor vehicle or trailer described in the declarations, and includes a *temporary substi-automobile*, a *newly acquired automobile*, and, . . . Temporary Substitute Automobile—means an *automobile* not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

4. See footnote 3, *supra*, for definition of these terms.

5. The court takes judicial notice of the fact that there is a delay of four to six weeks between the application for new certificates of title and registration and the actual issuance of such.

6. The court takes judicial notice of the fact that such temporary permits are normally issued. The fee for such a permit is one dollar.

7. Relevant portions of the act are set out below. See footnote 2, *supra*, for the text of A.S. 28.10.370.
   Sec. 28.10.290. Temporary permits. The department may grant a temporary permit to

operate a vehicle pending action on the application for registration and issuance of certificate of title. The fee for a temporary permit is $1. (§ 5(3) ch 124 SLA 1951, am § 2 ch 73 SLA 1953)
   Sec. 28.10.350. Transfer of title or interest by owner.
   (b) The owner may notify the department of the transfer or assignment of his title or interest in the vehicle within 10 days following transfer or assignment. This notification shall constitute a valid transfer under § 370 of this chapter. The notice form to be provided by the department shall include the following information:
   (1) name and address of owner;
   (2) name and address of transferee;
   (3) date of transfer or assignment;
   (4) description and license number of vehicle (§ 6(1) ch 124 SLA 1951; am § 1 ch 97 SLA 1968)
   Sec. 28.10.360. New owner to secure transfers. Before operating or permitting the operation of the vehicle on any highway, the transferee shall present the certificate of registration and the certificate of title, properly endorsed, accompanied by a fee of $2, to the department within 20 days following transfer of ownership, and shall apply for a

an automobile liability insurance policy. Defendants apparently contend that the act should be given a very literal interpretation citing this court's opinion in *Harbor Insurance Co. v. United States Fidelity & Guaranty Co.*, 350 F.Supp. 723 (D.Alaska 1972). There it was held that AS 28.10.370 prevented legal title, meaning ownership, from passing to a buyer where neither the buyer nor the seller complied with the appropriate provisions of the Alaska Motor Vehicle Act. AS 28.10.360 and AS 28.10.350. Accordingly, this court held that ownership remained with the seller so as to make the buyer a permissive user under the seller's omnibus clause.

■ The defendants' reliance on *Harbor* is misplaced for three principal reasons. First, *Harbor* involved a significantly different factual context than the instant case. Second, *Harbor* preceded Judge Singleton's opinion in *Graham v. Black*,[8] Superior Court, 3rd Jud.Dist., C.A. No. 71–3441 (1973) and the Alaska Supreme Court's decision in *Graham v. North River Insurance Company*, 533 P. 2d 20 (Alaska 1975) *affirming sub. nom.*, and on different grounds, *Graham v. Black*. Third, the legal issue in *Harbor* was presented in the context of an

*unopposed* motion for partial summary judgment. Since the court was presented with only one side of a very difficult question, this court, in effect, vacated its decision in *Harbor* by order dated March 12, 1973, wherein the court granted plaintiff's motion for relief from judgment. Accordingly, this court will not follow *Harbor*[9] if a more reasonable interpretation of AS 28.10.370 is possible.

■ Although the defendants apparently argue for a strict interpretation of AS 28.10.370, such an interpretation not only would require that the defendants' motion for summary judgment be denied, but additionally it would follow that the court should grant plaintiff summary judgment.[10] Plaintiff would be entitled to summary judgment for the reason that the vehicle involved in the accident on June 17, 1972, was not an owned vehicle since a new certificate of title had not yet been issued to Clark. Since the vehicle was not an owned vehicle under a strict interpretation of AS 28.10.370, the only possible coverage that Clark could have available would be under the "non-owned automobile" coverage provided by his policy. In relevant part, a non-owned automobile is defined

---

new certificate of title and obtain a new registration for the vehicle, except as permitted in § 390 of this chapter. There is a $25 penalty for the violation of the 20-day provision of this section. (§ 6(2) ch 124 SLA 1951; am § 1 ch 79 SLA 1968)

Sec. 28.10.560. Evidence. In a civil or criminal proceeding when the title or right to possession of a vehicle is involved, the record of registrations and certificates of title as they appear in the files and records of the department are prima facie evidence of ownership or right to possession of the vehicle. Proof of ownership, possession or right to possession of a vehicle shall be made by a copy of the record, certified by the department or by the original certificate of registration or certificate of title issued by the department. (§ 10(2) ch 124 SLA 1951)

Sec. 28.10.650. Definitions. In this chapter, unless the context otherwise requires . . . '(10) "owner" means a person who holds the legal title to a vehicle; but a vehicle is the subject of an agreement for the conditional sale or lease of it with the right of purchase upon performance of the condi-

tions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or if a mortgagor of a vehicle is entitled to possession, the conditional vendee or lessee or mortgagor is the owner for the purposes of this chapter; . . .

8. Of course, this court is not bound to follow the unreported decision of a state trial court. *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948); *but cf., Commissioner v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

9. It is very possible that *Harbor Insurance Co. v. United States Fidelity & Guaranty Co.*, 350 F.Supp. 723, *supra*, was erroneously decided on its facts. That is why this court, in effect, vacated that decision.

10. Although the plaintiff has not formally moved for summary judgment, it would be perfectly permissible for the court to grant summary judgment to the plaintiff without the necessity for a formal cross-motion. *See* 6 Moore's Federal Practice § 56.12.

as an automobile not furnished or available for the frequent or regular use of the named insured. The record clearly indicates that the car in question was furnished and available for the "frequent and regular use" of Clark.[11] Accordingly, Clark would have no coverage under his policy. However, such an interpretation is not required by the Act, when read in its entirety, by the applicable precedent, by reason, or by public policy.

Plaintiff contends that the question of coverage should turn on whether the accident occurred within thirty days after the named insured acquired ownership and received delivery of the automobile.[12] If the accident occurred within thirty days of such date then the policy would provide coverage under the newly acquired automobile clause, otherwise it would not. The purpose of such a clause is to protect a person, who is already carrying insurance, in the event that he buys another automobile or replaces one that he has previously owned. 7 *Appleman, Insurance Law and Practice*, § 4293. It gives the insured a reasonable time in which to make the necessary adjustments in his insurance to be protected against the possibility of substantial loss because of that which may be only a momentary lapse of attentiveness that results in the serious injury of third persons. As an additional benefit, there is the increased protection afforded the members of society that may be injured by the insured's negligence. *See, State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, 485 S.W.2d 397, 402 (Missouri 1972) *(dissenting opinion)*.[13]

It is in light of this situation that the provisions of the Alaska Motor Vehicle Act must be viewed. AS 28.10.370 provides in part, "Until the department issues a new certificate of registration and certificate of ownership, delivery of a vehicle required to be registered under this chapter shall be deemed not to have been made and title shall be deemed not to have passed, and the intended transfer shall be deemed incomplete and not valid or effective for any purpose." This court

11. It could be argued that due to the language of A.S. 28.10.370 no delivery took place and that the court should ignore the fact that Clark had physical possession of the automobile. Such a legal fiction is neither warranted by reason nor policy.

12. The so called "automobile coverage provision" is set out in its entirety in footnote 3, *supra*. It is clear that State Farm insured all the automobiles owned by the named insured at the time of the new acquisition. It is equally clear that the date of delivery refers to a delivery in connection with the acquisition of ownership. *California State Automobile Association Inter-Insurance Bureau v. Dearing*, 259 Cal.App.2d 717, 66 Cal. Rptr. 852 (Ct.App.1968). Further, the only sensible interpretation of the clause is that the named insured owned the automobile at the time of the accident. *Yahnke v. State Farm Fire and Casualty Co.*, 4 Ariz.App. 287, 419 P.2d 548 (Ct.App.1966) ; see, *State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, 485 S.W.2d 397 (Missouri 1972). Otherwise, the clause could produce ridiculous results. Finally, it is apparent that the accident only need occur within the thirty day grace period rather than the actual application for insurance on the newly acquired automobile. 34 ALR 2d 936.

13. Missouri is one of the jurisdictions that requires strict compliance with its motor vehicle act. Given the state of the law in Missouri, it appears that the majority opinion in *State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, *supra*, is correct. This court is unable to comprehend how the seller of an automobile can be the owner of a vehicle for the purpose of the seller's omnibus clause while the buyer is the owner for the purpose of the buyer's newly acquired automobile clause or owned vehicle coverage in general. However, California reaches such a result, but for good reasons. *See, California State Automobile Association Inter-Insurance Bureau v. Dearing*, 259 Cal.App. 2d 717, 66 Cal.Rptr. 852 (Ct.App.1968) ; *Uber v. Ohio Casualty Insurance Company*, 247 Cal.App.2d 611, 55 Cal.Rptr. 720 (1967) and the cases cited therein. The reason for such is that in California tort liability may be directly imposed on the fictitious but legal owner of a vehicle even though a sale has been completed. *See,* California Vehicle Code § 17150, and 5602. Since both the vendor and vendee are potentially liable, it is reasonable to treat both as owners for insurance purposes in order to afford them liability protection under their respective policies.

is unaware of any legislative history that indicates it was intended that this statute be superimposed upon a contract of insurance between an insured and his insurer. Rather, the judicial precedent in Alaska indicates that a contract of insurance should be construed in conformity with the reasonable expectations of a layman. *Graham v. Rockman*, 504 P.2d 1351 (Alaska 1972); *Continental Insurance Company v. Bussell*, 498 P.2d 706 (Alaska 1972). Absent compelling reasons, this court is reluctant strictly to apply the legal fiction created by AS 28.10.370 in an insurance context. To so apply the statute oftentimes results in making an insurer liable for damages for which its named insured is not liable and for a hazard not intended to be covered by the policy. In the context of the facts of the instant case, such an interpretation frustrates the insured's reasonable expectations of coverage while relieving the insurer of a risk that it surely intended to provide coverage against. Unfortunately the problems caused by AS 28.10.370 are of a recur-

ring nature,[14] because of the time delay in issuing new certificates of title and registration, and the fact that automobiles are often driven during the interim period. AS 28.10.290.

■ Three reasonable alternatives exist to a strict interpretation of AS 28.10.370. First, the statute could be held simply to not apply in an insurance context because it does violence to the reasonable expectations of both parties to the insurance contract.[15] Instead, resort to AS 45.05.036–.242 (Uniform Commercial Code—Sales) would be appropriate to determine when delivery occurs and title passes.[16] If *Graham v. North River Insurance Company*, 533 P.2d 20, *supra*, had not been decided this court would be inclined to follow this first alternative. However, *Graham* evidences the intention of the Alaska Supreme Court to resort to the provisions of the Alaska Motor Vehicle Act in determining when ownership is transferred for the purposes of insurance coverage.[17]

A second alternative would be to adopt an interpretation of AS 28.10.370 that

---

14. A review of the cases pending in this court indicates several actions involving highly similar, if not identical, questions.

15. Both *Graham v. Rockman*, 504 P.2d 1351, *supra*, and *Continental Insurance Company v. Bussell*, 498 P.2d 706, *supra*, tend to support this alternative. *See*, 12 *Couch, Insurance* 2d·Ed., Sec. 45:187; 7 *Appleman Insurance Law and Practice*, Sec. 4293. Additionally, Hawaii, *Pacific Insurance Company, Ltd. v. Oregon Automobile Insurance Company*, 53 Haw. 208, 490 P.2d 899 (1971) and Texas, *Smith v. Allstate Insurance Company*, 467 F.2d 104 (5th Cir. 1972) tend to support this first alternative. Both of these states have statutes similar to Alaska's. Although the Hawaii case speaks in terms of civil liability, the facts of that case strongly suggest that the question was one of insurance coverage. *See also*, *Park County Implement Co. v. Craig*, 397 P.2d 800 (Wyoming 1964); *contra*, *State Farm Mutual Insurance Company v. Holt*, 28 Utah 2d 426, 503 P.2d 1205 (1972); *Nationwide Mutual Insurance Company v. Hayes*, 276 N.C. 620, 174 S.E.2d 511 (1970); *State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, 485 S.W.2d 397, *supra*; cf. *National Indemnity Company v. Liberty Mu-*

*tual Insurance Company*, 513 S.W.2d 161 (Missouri 1974). For an excellent analysis of the problem see Judge Ely's opinion in *National Farmers Union Property and Casualty Company v. Colbrese*, 368 F.2d 405 (9th Cir. 1966) (interpreting Montana law). Although the Montana Supreme Court did not agree with that interpretation, *Ostermiller v. Parker*, 152 Mont. 337, 451 P.2d 515 (1968); *Irion v. Glens Falls Insurance Company*, 154 Mont. 156, 461 P.2d 199 (1969), the Montana legislature may well have. *See*, the 1971 amendment to section 53–109, Revised Code of Montana. Of course, there are numerous decisions that hold Motor Vehicle Acts inapplicable to insurance contract interpretation, but those decisions involve statutes which do not contain Alaska's prohibition. *See, e. g., Scott v. Continental Insurance Company*, 259 So.2d 391 (La.App.1972); *Wallace v. Employers Casualty Company*, 418 F.2d 1323 (9th Cir. 1969); *Semple v. State Farm Mutual Automobile Insurance Company*, 215 F.Supp. 645 (E.D.Penn.1963).

16. *But see*, the well written opinion in *Nationwide Mutual Insurance Company v. Hayes*, 276 N.C. 620, 174 S.E.2d 511 (1970).

17. This court had stayed the instant proceeding pending the outcome of *Graham*.

allows delivery and title to relate back to the date of the actual sale. This is the position taken by a line of Montana cases under a Motor Vehicle Act that was very similar to Alaska's.[18] In *Graham* the Alaska Supreme Court cited this line of cases in support of its holding that the notice given by a transferor in compliance with AS 28.10.350(b)[19] effects a valid delivery and transfer of title without the necessity of the issuance of new certificates of title and registration, and that such notice relates backs so as to make the transfer complete as of the date of the sale. Section 350(b) provides in part that, "This notification shall constitute a valid transfer under § 350 of this chapter." Since section 350(b) is a specific statutory exception to section 370, the court, in *Graham*, had no occasion to reconcile the Alaska Motor Vehicle Act with contract and sales law.

In the instant case the court is concerned with the transferee provision, section 360. That section provides:

"*New owner to secure transfers.* Before operating or permitting the operation of the vehicle on any highway, the transferee shall present the certificate of registration and certificate of title, properly endorsed, accompanied by a fee of $2, to the department within 20 days following the transfer of ownership, and shall apply for a new certificate of title and obtain a new registration for the vehicle, except as permitted in § 390 of this chapter. There is a $25 penalty for the violation of the 20-day provision of this section."

It can be argued that if a buyer complies with the twenty day requirement of section 360, then the date delivery is made and that title passes should relate back to the date of the actual sale. However, section 360 is not a specific statutory exception to section 370.[20] Section 360 does not provide that an application shall effect a transfer for the purposes of section 370. Therefore, this court does not find that the Alaska Supreme Court would apply the relation back rule of section 350 to section 360.

A third alternative, and the one which the court finds as the most reasonable method of reconciling the provision of the Alaska Motor Vehicle Act with contract and sales law, is to hold that AS 28.10.370 creates a presumption, for the purposes of a section 360 transfer, that there has been no delivery and that title or ownership [21] is lodged in the person who holds record title as reflected by the records of the Department of Revenue. However, this presumption may be rebutted by a showing that there has actually been a delivery and that ownership has actually passed to the vendee in conformity with the true intentions of the parties. Such an interpretation is supported by the provisions of AS 28.10.560 as applied in *Weaver v. O'Meara Motor Company*, 452

18. The date of delivery and acquisition of ownership would relate back only if there was a "regular transaction." *Irion v. Glens Falls Insurance Company*, 154 Mont. 156, 461 P.2d 199, *supra; Ostermiller v. Parker*, 152 Mont. 337, 451 P.2d 515, *supra; Safeco Insurance Co. v. Northwestern Mutual Insurance Company*, 142 Mont. 155, 382 P.2d 174 (Mont.1963); *American States Insurance Company v. Angstman Motors, Inc.*, 343 F.Supp. 576 (D.Mont.1972); *Phoenix Insurance Company v. Newell*, 329 F.Supp. 172 (D. Mont.1971); *Colbrese v. National Farmers Union Property & Casualty Company*, 227 F.Supp. 978 (D.Mont.1964) *reversed*, 368 F.2d 405 (9th Cir. 1966).
The Montana Statute, 53–109 R.C.M., was significantly amended in 1971.

19. See footnote 7, *supra*, for the full text of A.S. 28.10.350(b).

20. See footnote 2, *supra*, for the text of A.S. 28.10.370.

21. A.S. 28.10.650(10) defines "owner" as the "person who holds the legal title to a vehicle; but a vehicle [that] is the subject of an agreement for the conditional sale or lease of it with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee . . . is the owner for the purposes of this chapter."

P.2d 87 (Alaska 1969), which provide in relevant part, "In a civil or criminal proceeding when title or right to possession of a vehicle is involved, the record of registrations and certificates of title as they appear in the files and records of the department are prima facie evidence of ownership or right to possession of the vehicle." *Weaver* makes it clear that the parties to an action may introduce evidence to show who is in fact the true owner of a vehicle required to be registered under the provisions of the Alaska Motor Vehicle Act.[22] Such an alternative is also supported by Judge Singleton's opinion in *Graham v. Black, supra.* Although the Alaska Supreme Court affirmed *Graham* on different grounds, it did so without commenting on the rationale of the trial court's decision. The reason for such a failure to address the issues raised by the Superior Court was that under a correct interpretation of AS 28.10.-350(b) there was no need to reconcile section 370 with the contract and sales law of Alaska. Here a conflict exists that this court finds is resolved by the reasoning set forth in Judge Singleton's opinion.[23] Accordingly, this court finds that in a transfer made pursuant to AS 28.10.360 any real party in interest may attempt to rebut the presumption created by AS 28.10.370 in order to show that title passed and delivery occurred prior to the Department of Revenue's issuance of new certificates of registration and ownership. Since such an interpretation of AS 28.10.370 raises a genuine issue of material fact.

It is ordered:

That the motion for summary judgment filed by defendants Garfield, Karrer and Jolly is denied.

**22.** Accordingly, the precedent of Nebraska, *Turpin v. Standard Reliance Insurance Co.,* 169 Neb. 233, 99 N.W.2d 26 (1959) and Ohio, *Brewer v. DeCant,* 167 Ohio St. 411, 149 N.E.2d 166 (1958) which require strict adherence to their motor vehicle codes in order to effect a transfer of ownership for insurance purposes, can be distinguished since their codes do not contain a provision com-

parable to AS. 28.10.560. *Weaver,* in fact, distinguished the Ohio Supreme Court decision of *Mielke v. Leeberson,* 150 Ohio St. 528, 83 N.E.2d 209.

**23.** This court may give "proper regard" to a trial court decision. *Commissioner v. Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886, *supra.*