Diane ROBERSON, Appellant,

v.

Wayne MANNING and Dennis Wilson, Appellees.

No. S–13371.

Supreme Court of Alaska.

Jan. 27, 2012.

Goriune Dudukgian, Alaska Legal Services Corporation, Anchorage, for Appellant.

Appellees did not participate.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Wayne Manning told Diane Roberson he would give her his share of their jointly purchased mobile home. Without her knowledge, he then transferred title of the mobile home to his name only and sold it to Dennis Wilson. Wilson attempted to terminate Roberson's tenancy in the mobile home. Roberson filed suit in the superior court to be declared the owner of the home. The court concluded that Manning did not give his share of the home to Roberson and that Wilson was a good-faith purchaser and therefore the owner. Roberson appeals, arguing that she is the owner because Manning's gift to her was valid and the sale to Wilson was invalid. We vacate the superior court's con-

clusion that Manning did not give Roberson the home. We also vacate the superior court's determination that Wilson was a good-faith purchaser. We remand for additional findings on both of these issues.

## II. FACTS AND PROCEEDINGS

Diane Roberson and Wayne Manning were romantically involved between September 1989 and June 2005. In 1997 Roberson and Manning jointly purchased a mobile home in Anchorage. The financing bank retained the title, which remained in the name of the previous owners with the "transferee" line left blank.

The two occupied the mobile home off and on until 1999, after which time they rented it to Roberson's daughter.

On June 25, 2005, Manning petitioned for a domestic violence protective order against Roberson. Roberson moved into the mobile home with her daughter on or around the day the petition for a protective order was filed. At a June 30 hearing on the protective order petition, Manning stated on the record, "I'm going to pay it off and she can have my share of it. I don't have a problem with that." [1]

Soon thereafter, Manning paid the remaining balance on the mobile home and received the original title from the bank. In August 2006 Manning titled the mobile home in his name by filling in the transferee line on the original title with his name only. In August or early September he agreed to sell the mobile home to Dennis Wilson for $10,000.

Before the sale, Wilson visually inspected the outside of the mobile home and observed that someone was living there, but he did not inspect the inside. Wilson paid Manning $2,000 down in exchange for the title and agreed to pay the remainder within 30 to 45 days. Around the time of the sale, Manning told Wilson that his ex-girlfriend was living in the mobile home, but not that Roberson and Manning had been co-purchasers of the home. Wilson transferred the title to his name on September 2, 2006. Wilson later

testified that after "this lawsuit came up," he told Manning he would not pay the remaining $8,000 until title was "straightened out" or, as Manning testified, until Wilson "got rid of Ms. Roberson from the trailer."

On September 6, 2006, Wilson had a Notice to Terminate Tenancy delivered to Roberson. It informed her that the mobile home had been sold to Wilson and that Wilson would evict her if she did not vacate the home by October 6.

Roberson remained in the mobile home and filed a complaint for declaratory and injunctive relief in the superior court against Manning and Wilson. She requested declarations that she was the mobile home's rightful owner and that Wilson was not a bona fide purchaser. She also requested injunctions prohibiting Manning or Wilson from evicting her and ordering them to convey the mobile home's title to her.

The superior court conducted a bench trial in July 2008. At that time, Roberson was still living in the mobile home. Manning testified that he agreed to give Roberson his share of the mobile home at the 2005 domestic violence hearing only because she was trying to move into his house where he lived with his mother. He feared that if Roberson returned to his house, she would abuse his mother. As a result, he argued that the gift was made under duress and was therefore invalid. Wilson, who was pro se, argued that he was the rightful owner because he purchased the mobile home in good faith.

The superior court concluded that Manning did not give his share of the mobile home to Roberson because there was no delivery through title transfer. The court also concluded that Wilson was a good-faith purchaser of the mobile home. It concluded that Roberson and Manning were co-owners of the mobile home and that Roberson should receive 50% of the proceeds of the sale. The court further concluded that Wilson was entitled to immediate possession.

On appeal, Roberson argues that Manning gave her his share of the mobile home. She

---

1. Manning's attorney played a recording of this portion of the 2005 hearing during the proceedings currently under review. It is therefore a part of the appellate record in this case. *See* Alaska R.App. P. 210.

argues that the superior court erred in concluding .that Wilson was the owner of the home because Manning did not have voidable title to her share of the mobile home and Wilson was not a good-faith purchaser. She asks us to reverse the superior court and hold that she is the sole owner of the home.

## III. DISCUSSION

### A. Standard Of Review

■ We apply our independent judgment to questions of law, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy." [2] We review de novo the application of law to facts.[3]

### B. It Was Error To Conclude That Manning Did Not Give His Share Of The Mobile Home To Roberson Solely Because Manning Did Not Deliver Title.

The superior court concluded that Manning did not give his share of the mobile home to Roberson at the June 2005 hearing because, although "intention to give it up was expressed," Manning never transferred title to Roberson. Roberson argues that Manning delivered the property because she was living in the home as of June 2005, and that Manning therefore properly gave her his share of the mobile home.

■ Under Alaska law, the transfer of ownership of a vehicle, including a mobile home,[4] is "not effective" [5] until the original owner "deliver[s] the certificates of title and registration to the transferee at the time of

delivery of the vehicle." [6] Failure of delivery of the title and registration, however, only "creates a presumption ... that there has been no delivery" until title has passed properly.[7] "[T]his presumption may be rebutted by a showing that there has actually been a delivery and that ownership has actually passed ... in conformity with the true intentions of the parties." [8] Alaska Statute 28.10.261 supports this interpretation, providing that "[i]n a civil ... proceeding, when the title or right to possession of a vehicle is involved, the ... records of the [Department of Motor Vehicles] are prima facie evidence of the ownership or right to possession." The statute "does not preclude oral testimony as to the ownership, or right to possession, of a motor vehicle" that can outweigh the prima facie evidence.[9]

■ It was legal error to conclude that Manning did not transfer his share of the mobile home to Roberson solely because he did not transfer title. The superior court should have viewed the failure to transfer title as only prima facie evidence and considered whether the other evidence of transfer of ownership presented at trial outweighed the prima facie evidence.[10] Because additional findings of fact are required to correctly apply the law, we vacate the superior court's conclusion and remand for a determination of whether Roberson overcame the presumption that there was no delivery of the mobile home.[11]

■ The superior court must determine the true intentions of the parties to fully

---

**2.** *Young v. Embley,* 143 P.3d 936, 939 (Alaska 2006) (internal citations omitted).

**3.** *Dodson v. Dodson,* 955 P.2d 902, 905 (Alaska 1998) (citing *Fitzgerald v. Puddicombe,* 918 P.2d 1017, 1019 (Alaska 1996)).

**4.** AS 28.10.661(2).

**5.** AS 28.10.361.

**6.** AS 28.10.271(b).

**7.** *See State Farm Mut. Auto. Ins. Co. v. Clark,* 397 F.Supp. 745, 752 (D.Alaska 1975) (interpreting former AS 28.10.370 (repealed 1978)). This case interpreted the precursor to AS 28.10.271(b). *Compare* AS 28.10.271(b), *with* former AS 28.10.350, *and* former AS 28.10.370. The statutes are substantially similar.

**8.** *See State Farm,* 397 F.Supp. at 752.

**9.** *See Weaver v. O'Meara Motor Co.,* 452 P.2d 87, 90 (Alaska 1969) (interpreting former AS 28.10.560).

**10.** We note that the fact that Roberson remained in possession of the mobile home is an indication that the home had actually been delivered. *See* 38 Am.Jur.2d *Gifts* § 20 (2009) ("[P]ersonal delivery by the donor is not necessary when a donee is already in possession of the property in question and the donor's intention to surrender all right to the property is fully and clearly manifested.").

**11.** *State, Dep't of Health & Soc. Servs., Office of Children's Servs. v. Doherty,* 167 P.3d 64, 71 (Alaska 2007) (remanding so that party could submit relevant documentary evidence); *S.B. v.*

assess whether Roberson overcame the presumption that there had been no delivery of the mobile home.[12] The superior court must also determine if Manning had the necessary donative intent to make a gift of his share of the mobile home to Roberson, rather than a mere promise to make a gift in the future. Generally, a promise that is not supported by consideration is not legally enforceable.[13] Manning's donative intent must be clear, unmistakable, and unequivocal.[14] The superior court should look to the facts and circumstances surrounding the parties, the relationship between the parties, and especially Manning's direct expressions in order to determine his intent.[15]

At the bench trial before the superior court, Manning also argued that the gift was made under duress, thus signifying that he did not truly intend to give Roberson the mobile home. Therefore, the superior court should also consider whether Roberson exerted undue influence over Manning. We have held that a gift is void if obtained by undue influence.[16] When determining whether there was undue influence, the superior court should consider the effect of the influence, the person by whom it was exerted, the time and place, and all other circumstances.[17] Manning has the burden of showing that he was "virtually compelled" to give Roberson the mobile home, and that he "would not have [given] it if left to the free exercise of [his] own judgment and wishes."[18]

## C. The Question Whether Wilson Was A Good–Faith Purchaser Must Be Remanded To The Superior Court For Further Findings.

The superior court concluded that Wilson was a good-faith purchaser because there was no evidence of impropriety or conspiracy, and Wilson offered a price for the home that was "consistent with his purposes and needs." As a result, the court concluded that Wilson was entitled to possession, and Manning and Roberson, as co-owners, should divide the proceeds of the sale equally.

Roberson argues that Wilson was not a good-faith purchaser because he knew Roberson was living in the home but never inquired about her interest in it, and because he knew the purchase price was far below market value. On the issue of Wilson's knowledge, Manning testified at the trial that he had told Wilson that Wilson would have to evict Roberson from the trailer because she was living in it. Wilson testified that at first Manning did not mention that anyone was living in the trailer but Wilson knew that Manning himself was no longer living in it. Wilson testified that he "looked at the outside of [the trailer]" and that he drove by it every day, and could tell someone lived in trailer because cars were parked there, among other things.

Regarding the purchase price, Wilson testified that his trailer, though older than the trailer in dispute, was appraised at $23,000 and that the deal he struck with Manning was to pay $10,000 with $2,000 down. Wilson testified that the deal was to get the remainder of the money to Manning within 30 to 45 days but that when this suit arose, he said, "I'm not paying [Manning] any more money until we get this title straightened out."

Wilson then testified that the trailer park's property managers told him that Roberson was living in the trailer when he took the title to the trailer park office, but that he did

---

*State,* 614 P.2d 786, 790 (Alaska 1980) (remanding to superior court to make essential finding of fact and correctly apply rule of law).

**12.** *See State Farm,* 397 F.Supp. at 752.

**13.** *See generally* E. ALLAN FARNSWORTH, CONTRACTS § 2.5 (4th ed. 2008).

**14.** 38 AM JUR 2D *Gifts* § 18 (2009). *See also Ferer v. Aaron Ferer & Sons Co.,* 273 Neb. 701, 732 N.W.2d 667, 674 (2007) ("A clear and unmistakable intention on the part of the donor to make a gift of his or her property is an essential element of the gift. . . .").

**15.** *See* 38 AM.JUR.2D *Gifts* § 19 (2009); 38A C.J.S. *Gifts* § 16 (2009).

**16.** *Ware v. Ware,* 161 P.3d 1188, 1193 (Alaska 2007) (applying rule to gift from parent to child).

**17.** *Id.* (internal citations omitted).

**18.** *See id.* at 1194 (internal citations omitted).

not ask Manning how Roberson came to live there. Wilson testified that Manning told him that Manning and Roberson had been in a relationship for many years, but did not say they had purchased the trailer together.

As we explain above in Part B, there remains a question whether Manning conveyed his interest in the mobile home to Roberson, or whether they were equal co-owners at the time that Manning attempted to sell the mobile home to Wilson. Even so, if a seller has voidable title to goods, he may sell them to a good-faith purchaser for value.[19]

▪ We observe there is an unresolved question whether Manning's title was voidable or void. The Fifth Circuit explained the distinction between voidable title and void title in *American Standard Credit, Inc. v. National Cement Co.*:[20]

> For the seller to have obtained even voidable title, he must have obtained delivery of the goods through "a transaction of purchase." While this phrase has been defined broadly by various courts, it is generally limited to those situations in which the party who delivered the goods to the subsequent seller intended, however misguidedly, that the seller would become the owner of the goods. Thus, the con artist who fraudulently induces a manufacturer to deliver goods to him by means of a forged check has voidable title because he obtained delivery through a transaction of purchase, even though the defrauded manufacturer could bring criminal charges against the con artist; under [UCC] section 2–403(1), the defects in the con artist's voidable title would be cured by a sale to a good faith purchaser for value, and the good faith purchaser would obtain clear

title, free from any claims of the manufacturer. But if the con artist merely converts the goods to his own use *after having obtained possession of them in some manner other than through a transaction of purchase,* he does not have even voidable title; instead, he has void title, and cannot pass good title even to a good faith purchaser for value.

(Emphasis added.)

Some courts interpret the phrase "transaction of purchase" broadly to include "sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property."[21] These transactions assume a voluntary transfer of the asset, even if the transfer is under false pretenses. These courts, and commentary on the UCC, agree that "[t]he voidable title rule does not alter the common law rule that when goods are stolen, the true owner may reclaim the goods although subsequent sales have been made thereof."[22] "The voidable title rule does not apply where the goods have been stolen."[23] As one commentator summarized, "[a] possessor of goods does not have voidable title *unless the true owner has consented to the transfer of title to the possessor, even though the transfer is voidable because of some form of fraud.*"[24]

Manning titled the mobile home in his name by filling in the transferee line on the original title with his name only. It appears he did this without Roberson's permission and despite the bill of sale's recognition that both parties owned the mobile home. Thus, it may be that Manning's title was void, not voidable, when he sold the mobile home to

---

**19.** AS 45.02.403(a) ("A person with voidable title has power to transfer a good title to a good faith purchaser for value."). *See also* BLACK'S LAW DICTIONARY 374 (9th ed. 2009) (defining a voidable contract as "[a] contract that can be affirmed or rejected at the option of one of the parties; a contract that is void as to the wrongdoer but not void as to the party wronged, unless the party elects to treat it as void.").

**20.** 643 F.2d 248, 268 (5th Cir.1981).

**21.** *Creggin Grp., Ltd. v. Crown Diversified Indus. Corp.,* 113 Ohio App.3d 853, 682 N.E.2d 692, 696 (1996).

**22.** LARY LAWRENCE, LAWRENCE'S ANDERSON ON THE UNIFORM COMMERCIAL CODE § 2–403:67 (2009); *see also Creggin Grp.,* 682 N.E.2d at 697 ("[I]f goods are stolen from the true owner there has been no transaction of purchase.").

**23.** LAWRENCE, *supra* note 22, § 2–403:67; *see also id.* ("[W]here the owner loses, or is robbed of, the goods, the owner can reclaim the goods no matter in whose possession they may be found.").

**24.** *Id.* (emphasis added).

Wilson. If true, Wilson would not have been entitled to protection under AS 45.02.403(a) [25] as a good-faith purchaser for value. The superior court must resolve these questions on remand and determine whether Manning possessed a voidable title or void title.

If Manning's title is determined to be voidable, the issue then is whether Wilson was a good-faith (bona fide) purchaser.[26] If he was, then his purchase from Manning was legally valid even if Manning only had voidable title. If he was not, then his purchase from Manning cannot be upheld.

Good faith is "honesty in fact in the conduct or transaction concerned." [27] We have noted that a purchaser acts in bad faith when there is evidence of the purchaser's "subjective and conscious dishonesty." [28] Evidence of the purchaser's "subjective knowledge" of a possible flaw in the transaction shows bad faith.[29] Wilson testified as to his subjective and conscious knowledge of possible adverse interests in the mobile home. After Wilson and Manning began discussing the sale, but before finalization, Wilson drove by the mobile home multiple times and observed that someone was living there. He knew at the time that Manning was not living in the mobile home but apparently did not learn that Roberson was the occupant until after exchanging the $2,000 down payment for the title to the mobile home.

The superior court's conclusion that Wilson was a good-faith purchaser did not address Wilson's willingness to go through with the sale knowing that an as-of-yet-unidentified third party was living in the mobile home. In analogous circumstances, we have stated that it is a "settled rule of property" that when circumstances surrounding the purchase of real property "suggest outstanding equities in third parties," the purchaser has a duty "to make a reasonable investigation into the existence of a claim." [30]

A mobile home is personal property, as opposed to real property, and its sale is governed by the UCC. In *Frantz v. First National Bank of Anchorage*, we applied the UCC's definition of good faith.[31] We held that actual knowledge or reason to know of a possible flaw in a transaction creates an "affirmative duty to inquire" about the possible flaw.[32] While *Frantz* is about a personal check and not a mobile home, our reasoning applies even more strongly in the context of a mobile home. A mobile home is different from other forms of personal property because it serves as a residence.

25. AS 45.02.403(a) provides:
   A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have *been delivered under a transaction of purchase*, the purchaser has such power even though
   (1) the transferor was deceived as to the identity of the purchaser;
   (2) the delivery was in exchange for a check that was later dishonored;
   (3) it was agreed that the transaction was to be a "cash sale"; or
   (4) the delivery was procured through fraud punishable as larcenous under the criminal law.
   (Emphasis added.)

26. Wilson was a purchaser even though he did not pay the entire purchase price up front. *See* Lawrence, *supra* note 22, § 1–201:411; *see also Alpine Paper Co. v. Lontz*, 856 S.W.2d 940, 943 (Mo.App.1993).

27. Former AS 45.01.201(20). It was replaced by AS 45.01.211(b)(22), effective January 1, 2010 and not applicable to any right of action that accrued before that date. Ch. 44, §§ 9, 115, SLA 2009.

28. *Dischner v. United Bank Alaska*, 631 P.2d 107, 111 (Alaska 1981).

29. *Frantz v. First Nat'l Bank of Anchorage*, 584 P.2d 1125, 1127 (Alaska 1978).

30. *Modrok v. Marshall*, 523 P.2d 172, 174 (Alaska 1974); *see also Methonen v. Stone*, 941 P.2d 1248, 1252 (Alaska 1997) ("It is well established that a purchaser will be charged with notice of an interest adverse to his title when he is aware of facts which would lead a reasonably prudent person to a course of investigation which, properly executed, would lead to knowledge of the servitude.").

31. *Frantz*, 584 P.2d at 1127.

32. *Id.* (stating that absent actual knowledge or reason to know of defenses to an instrument, the bank has no affirmative duty to inquire whether defenses exist to maintain status as holder in due course). *See also* AS 45.01.201(26) (stating definition of when a party has "notice").

We vacate the superior court's conclusion that Wilson was a good-faith purchaser and remand for additional findings. On remand, the superior court should consider whether Wilson inquired sufficiently into the nature of the mobile home occupant's interest in the mobile home and its effect on Wilson's status as a good-faith purchaser.

## IV. CONCLUSION

We VACATE the superior court's conclusions that Manning did not give his share of the mobile home to Roberson and the superior court's determination that Wilson was a good-faith purchaser for additional findings. We REMAND for further proceedings consistent with this opinion.