CREGGIN GROUP, LTD., Appellant,

v.

CROWN DIVERSIFIED INDUSTRIES CORP., d.b.a. Million Air, Appellee.■

[Cite as *Creggin Group, Ltd. v. Crown Diversified Industries Corp.* (1996), 113 Ohio App.3d 853.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA95–09–083.

Decided Aug. 26, 1996.

*John P. Fox,* for appellant.

*Rubbert, Bronson, Chicarelli & Smith Co., L.P.A.,* and *John D. Smith,* for appellee.

WILLIAM W. YOUNG, Judge.

Respondent-appellant, the Creggin Group, Ltd., appeals a Warren County Court of Common Pleas order of possession in favor of movant-appellee, Crown Diversified Industries Corporation ("Crown"). The trial court held that Crown was the true and rightful owner of a Cessna aircraft in the Creggin Group's possession.

On October 11, 1991, Richard Maguire, as president and sole shareholder of the Creggin Group ("Creggin"), signed an agreement with Gerald Duke entitled "Aircraft Lease Purchase Agreement." Duke had previously responded to Creggin's advertisement for the sale of the Cessna aircraft in the Trade–A–Plane, a national journal. Maguire agreed to Duke's suggestion that the parties sign a lease/purchase agreement and that Duke make monthly payments on the airplane. Payments were to total Creggin's $63,900 original asking price for the aircraft plus interest.

The lease/purchase agreement called for a buy-out option of $15,000 to be paid at the end of the lease term. The parties, however, had agreed that Duke would present Creggin with a $15,000 certified check before Duke took possession of the plane. On October 11, Duke gave Creggin a noncertified check drawn on the corporate account of the "Crime Prevention Company." Duke had told Creggin that he was a principal in that company. Creggin turned possession of the Cessna over to Duke, and Duke flew the aircraft to Alabama that evening.

In the midst of negotiations with Creggin, Duke had contacted Crown, a company seeking a Cessna aircraft through an advertisement in the Trade–A–Plane journal. Duke informed Donald MacGregor, Crown's representative, that he was purchasing a Cessna from Creggin and would be willing to resell the airplane. MacGregor performed a Federal Aviation Administration ("FAA") title search on the Cessna. The title search revealed that the aircraft's record owner was Creggin and that there were no outstanding liens against the aircraft. Duke eventually accepted Crown's offer of $48,000 for the Cessna. In anticipation of the transaction with Crown, Duke apparently forged a bill of sale for the Cessna naming Creggin as the seller and himself as the purchaser. Duke sold the aircraft to Crown on October 14, 1991.

Maguire reported the Cessna stolen after Duke's $15,000 check to Creggin was dishonored. The FBI subsequently located the Cessna, notified Crown that it had been stolen and returned the aircraft to Creggin.

On July 7, 1993, Crown instituted a replevin action against Creggin in the Warren County Court of Common Pleas. After a trial to the court, the trial court entered judgment in favor of Crown. The court found that Duke had purchased the airplane from Creggin in exchange for the $15,000 check and

Duke's promise to pay the remainder of the $63,000 purchase price in monthly installments. The trial court concluded that Duke was "lawfully in possession of this airplane when he sold it to" Crown. The trial court discounted the fact that Duke's check to Creggin was no good and stated that "Duke did not steal the airplane; he did break his promise to pay for it." The court also held that Creggin was estopped from denying Crown's ownership even if Creggin had not intended to sell the plane to Duke. The court reasoned that "the transfer of possession coupled with [Creggin's] consent for Duke to make unrestricted use of the airplane and to take it whereever [sic] he wished prevents Creggin from exerting his ownership as against an innocent and unwary subsequent purchaser such as [Crown]."

On appeal, Creggin sets forth five assignments of error for review. Under its first assignment of error, Creggin complains that the trial court erred in denying its motion to disqualify Crown's trial counsel. Creggin insists that it had previously retained an attorney for assistance in this case who happened to be a partner of Crown's trial counsel. Creggin argued that Crown's trial counsel had a conflict of interest.

In 1993, Maguire had contacted James Ruppert, a partner in the law firm of Ruppert, Bronson, Chicarelli, & Smith Co., L.P.A. ("RBC & S"), with regard to Crown's replevin action. Maguire subsequently made copies of documents related to the case and dropped them off at Ruppert's office. Creggin later apparently concluded that Ruppert could not represent it because the presiding judge at that time, Neil Bronson, was married to a partner in Ruppert's firm.

On February 5, 1995, John D. Smith, of RBC & S, replaced Stephen D. Strauss and Todd Iveson as counsel for Crown. On or about March 7, 1995, Creggin's trial counsel asked Smith to withdraw from the case based upon a conflict of interest. Creggin insisted that it had previously retained Smith's partner, Ruppert, in regard to the pending litigation. On March 13, Smith notified Creggin's counsel that he would not withdraw. Creggin filed a motion to disqualify Smith on March 22, one day before trial.

The trial court heard arguments on the motion immediately before the trial was set to begin on March 23. By way of affidavit, Ruppert claimed that he had no independent recollection of ever talking to Maguire or anyone else regarding the replevin action. Timothy N. Tepe, an associate at RBC & S, was the only witness to testify at the disqualification hearing. Tepe brought to court with him a file that apparently contained the documents that Maguire had left at Ruppert's office in 1993. Tepe received the documents from Ruppert's secretary. Shortly thereafter, Tepe went to Ruppert for instructions and was told to "hold off." Within a week, Tepe returned to Ruppert and was told to forget the file because Ruppert had not been contacted to follow up on the matter. According to Tepe,

the file remained in his file cabinet until he was questioned about it the day before the disqualification hearing. Tepe stated that he never performed any work on the file and did not discuss the contents of the file with anyone. The trial court subsequently denied Creggin's motion to disqualify Crown's counsel.

Creggin insists that an attorney-client relationship existed between Ruppert and itself. Creggin argues that under the Ohio Code of Professional Responsibility, Smith, a partner with Ruppert, could not represent an opposing party in the same case.[1] A trial court, however, has broad discretion in deciding whether to disqualify an attorney from continued participation in ongoing litigation and this court will not disturb the trial court's ruling in that regard absent an abuse of discretion. *Grubb v. Hollingsworth* (1990), 69 Ohio App.3d 804, 806, 591 N.E.2d 1297, 1298–1299; see, also, *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379.

An attorney should not be disqualified *solely* upon an allegation of a conflict of interest; even where the requested disqualification is based upon ethical considerations, the moving party still must demonstrate that disqualification is necessary. See *Kitts v. U.S. Health Corp. of S. Ohio* (1994), 97 Ohio App.3d 271, 275, 646 N.E.2d 555, 558. Even if an attorney's continued representation would violate one of the Canons of the Code of Professional Responsibility, counsel should not be disqualified unless the attorney's conduct poses a significant risk of tainting the trial. *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 22, 601 N.E.2d 56, 58–59.

Here, the trial court was not convinced that Smith or any other attorney associated with the case was aware of the documents left at Ruppert's office or of any other confidential information. The court did not believe that the trial would be tainted by any potential conflict of interest. After reviewing the record, this court is not convinced that the trial court abused its discretion by denying Creggin's motion to disqualify counsel. Creggin's first assignment of error is overruled.

Creggin's second assignment of error claims that the trial court violated Civ.R. 52 when it failed to issue separate findings of fact and conclusions of law as requested. This assignment of error is not well taken.

On March 23, 1995, Creggin moved the trial court to render separate findings of fact and conclusions of law. After the trial court filed its decision on May 31, Creggin filed a motion for reconsideration claiming that the trial court failed to

---

1. Creggin cites Canons 4 and 5 of the Code of Professional Responsibility. Canon 4 provides that an attorney should preserve the confidences and secrets of a client. Canon 5 provides that a lawyer should exercise independent professional judgment on behalf of a client.

issue separate findings of fact and conclusions of law in accordance with Civ.R. 52. Creggin essentially wanted the trial court to answer two questions: (1) whether Duke forged a bill of sale for the Cessna aircraft and (2) whether Duke was a dealer of airplanes in the business of buying and reselling airplanes for a profit from an inventory or stock of goods in the ordinary course of business.

 The purpose of separately stated findings of fact and conclusions of law is to enable a reviewing court to determine the existence of assigned error. *Abney v. W. Res. Mut. Cas. Co.* (1991), 76 Ohio App.3d 424, 431, 602 N.E.2d 348, 352. If the record and a well-written trial court opinion provide "an adequate basis upon which an appellate court can decide the legal issues presented, there is * * * substantial compliance with Civ.R. 52." *Id.,* citing *Stone v. Davis* (1981), 66 Ohio St.2d 74, 84–85, 20 O.O.3d 64, 70–71, 419 N.E.2d 1094, 1101.

The trial court's written opinion in this case is adequately detailed and sufficient to advise this court of the basis for the lower court's decision. Importantly, the specific questions Creggin asked the trial court to answer were not necessary to the trial court's final determination. Although the trial court did not file a document entitled "Findings of Fact and Conclusions of Law," this court is satisfied that the trial court complied with Civ.R. 52. Creggin's second assignment of error is overruled.

 The third assignment of error claims that Duke could not convey good title of the aircraft to Crown. Creggin insists that a transferee from Duke could only acquire good title to the aircraft if the court determined that Duke was "a merchant who deals in goods of that kind." Creggin is mistaken.

The "voidable title" doctrine evolved to ameliorate the harshness of the basic rule that a seller can convey no greater title than that seller has to convey. 1 Quinn's Uniform Commercial Code Commentary and Law Digest (2 Ed.1991) 2–370, Paragraph 2–403[A][3]. The doctrine attempts to reconcile the rights of a true owner who was fraudulently induced to transfer title in goods to a wrongdoer with the rights of an innocent purchaser from the wrongdoer. Title in the wrongdoer is voidable because the true owner is entitled to rescind the transaction and recover the goods from that individual. The right of rescission is cut off, however, by a transaction to a good faith purchaser.

In Ohio, R.C. 1302.44(A), which is identical to UCC 2–403(1), sets forth the voidable title doctrine. To encourage conformity, the provision clearly indicates that the voidable title doctrine specifically covers four situations that had created confusion in the past. R.C. 1302.44(A) provides:

"(A) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has

power to transfer a good title to a good faith purchaser for value. *When goods have been delivered under a transaction of purchase, the purchaser has such power even though:*

"(1) the transferor was deceived as to the identity of the purchaser, or

"(2) *the delivery was in exchange for a check which is later dishonored,* or

"(3) it was agreed that the transaction was to be a 'cash sale,' or

"(4) *the delivery was procured through fraud punishable as larcenous under the criminal law.*" (Emphasis added.)

The voidable title doctrine applies only where there is a "transaction of purchase." The Ohio Uniform Commercial Code defines "purchase" broadly, however. " 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property." R.C. 1301.01(FF).[2]

Further, only a good faith purchaser for value can receive good title from a transferee with voidable title. " 'Good faith' means honesty in fact in the conduct or transaction concerned." R.C. 1301.01(S).

 If Duke acquired the Cessna from Creggin pursuant to a transaction of purchase, then he had voidable title to the aircraft. If Crown subsequently purchased the airplane from Duke in good faith, then Creggin's right of rescission would have been cut off by Duke's transfer of the airplane to an innocent purchaser.

Here, the trial court found that Creggin intended to sell, not lease, the Cessna to Duke. That finding is supported by some competent, credible evidence in the record. Although the purchase/lease agreement called for a buy-out payment to be made at the end of the lease term, the parties agreed that Duke would tender that payment before delivery. Maguire himself admitted that at the end of the lease period, the Cessna was to remain with Duke and was not to be returned. Two letters, admitted at trial as exhibits, also lend some support to the trial court's finding that Creggin intended to sell this aircraft to Duke. In one letter to Duke dated October 15, 1991, Maguire indicated his understanding that Duke would not return the aircraft. In another letter to his insurance carrier on

---

2. At least one court has held that a "true lease" is not a "transaction of purchase" and will not confer voidable title upon the lessee. *Am. Std. Credit v. Natl. Cement Co.* (C.A.5 1981), 643 F.2d 248, 268. " 'Lease' means a transfer of the right to possession and use of goods *for a term* in return for consideration. *A sale, including a sale on approval or a sale or return, or retention or creation of a security interest, is not a lease.*" (Emphasis added.) R.C. 1310.01(A)(10). The retention or reservation of title is limited in effect to a reservation of a security interest. R.C. 1301.01(KK).

October 26, 1991, Maguire indicated that he had intended to sell the aircraft to Duke.

From the evidence presented, the trial court could reasonably conclude that Duke took possession of the Cessna as part of a transaction of purchase. See R.C. 1301.01(FF). Duke therefore had the power to convey good title to a good faith purchaser despite the fact that Creggin transferred the airplane "in exchange for a check which is later dishonored," and despite the fact that delivery was accomplished through "fraud punishable as larcenous" under Ohio law.[3] R.C. 1302.44(A)(2) and 1302.44(A)(4).

R.C. 1302.44(A) does not alter the general common-law rule that where goods are stolen and later sold, the true owner's rights are not severed by subsequent sales. See Quinn at 2–372, paragraph 2–403[A][6]. This is so, however, because if goods are stolen from the true owner there has been no transaction of purchase, i.e., no intent to transfer title to the goods, and R.C. 1302.44(A) has no application.[4] See Hillman, McDonnell & Nickles, Common Law and Equity Under the Uniform Commercial Code (1985) 5–15, paragraph 5.04[1]. Here, as noted above, the transaction between Creggin and Duke can be considered a transaction of purchase regardless of Duke's larcenous intent. See R.C. 1302.44(A)(4). That Duke subsequently showed Crown a forged bill of sale for the plane does not change the character of the transaction between Creggin and Duke.

Duke could only pass good title along to Crown if Crown acted as a good faith purchaser for value. The trial court could reasonably conclude that Crown purchased the Cessna in good faith, i.e., with honesty in fact. In anticipation of its purchase, Crown performed a title search with the FAA and confirmed that Creggin was the title holder of the aircraft. There is no evidence that the price Crown paid Duke for the Cessna was unreasonably low.[5] See *Hollis v. Chamberlin* (1967), 243 Ark. 201, 419 S.W.2d 116 (wrongdoer who purchased camper with a bad check had voidable title but subsequent buyer was not good faith purchaser where price paid was unreasonably low). One could argue that Crown acted

---

3. R.C. 2913.02(A)(3) provides:

 "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception * * *."

4. Although the trial court said that "Duke did not steal the airplane; he did break his promise to pay for it," Duke certainly could have been charged with theft by deception in Ohio. The court, however, was attempting to stress that Creggin voluntarily turned the aircraft over to Duke.

5. Maguire purchased the Cessna in 1989 for $38,000. Crown purchased the aircraft from Duke for $48,000.

negligently in accepting a forged bill of sale as proof that Creggin sold the airplane to Duke. Even if Crown were negligent, however, the trial court could still conclude that it purchased the Cessna in good faith.

To summarize, there is evidence in the record that Duke took possession of the aircraft through a transaction of purchase with Creggin. In that case, Duke had voidable title of the aircraft and could pass along good title to a good faith purchaser for value. The trial court could reasonably conclude that Crown purchased the aircraft from Duke in good faith. Therefore, the trial court did not err in awarding ownership of the Cessna to Crown pursuant to R.C. 1302.44(A). Creggin's third assignment of error is overruled.

The fourth assignment of error argues that Crown did not have an ownership interest in the Cessna and could not therefore prevail on its replevin action. Creggin claims that MacGregor and Joe Scott, Jr., the owner of Crown, had formed a partnership to buy and sell airplanes; Creggin argues that this partnership, not Crown, purchased the Cessna from Duke. This assignment of error is meritless.

At trial, MacGregor testified that he negotiated with Duke for the purchase of the Cessna on behalf of Crown. MacGregor insisted that Crown was the purchaser of the aircraft. MacGregor's testimony was buttressed by other evidence in the record. The aircraft bill of sale lists Crown as the purchaser of the Cessna and an FAA certificate of registration lists Crown as the registration applicant. The trial court properly concluded that Crown was the real party in interest. Creggin's fourth assignment of error is overruled.

In its final assignment of error Creggin submits that the trial court erred in refusing to admit two exhibits into evidence. The trial court concluded that the documents in question had not been properly authenticated. This assignment of error is also without merit.

Creggin first referred to the documents in question during its case in chief. The documents consisted of two letters Maguire had received in the mail from the United States Justice Department concerning Duke's criminal prosecution in the Federal District Court for the Northern District of Alabama. Creggin's trial counsel showed the documents to both MacGregor and Maguire. MacGregor admitted that he had seen them before and had provided information to the federal authorities in response to the letters. Maguire responded that the documents were true and accurate copies of letters he had received in the mail.

The admission of evidence is generally left to the sound discretion of the trial court. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290, 292–293. Absent an abuse of discretion that materially prejudices the complaining party, the trial court's determination whether to exclude or admit

evidence will stand. *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291, 1298–1299.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "A writing may be authenticated under Evid.R. 901(B)(1) by testimony of a witness who has firsthand knowledge of the execution, preparation or custody of the writing." 1 Weissenberger Ohio Evidence (1991), Section 901.14.

No one with firsthand knowledge of the execution or preparation of the letters and attached court documents in question testified as to their authenticity and there is no indication that they were self-authenticating. See Evid.R. 902. The trial court did not abuse its discretion in concluding that the documents had not been adequately authenticated. Moreover, Creggin has not presented this court with any argument as to the relevance of the documents in question. Therefore, even if the documents had been properly authenticated, Creggin did not come forward with any argument that exclusion of the documents was materially prejudicial. Creggin's fifth assignment of error is overruled.

*Judgment affirmed.*

WALSH, P.J., and KOEHLER, J., concur.