This is an appeal from a verdict following a bench trial before Judge Nancy R. McDonnell. Appellant Virgil C. Hall alleged that appellee Peter Pan Stables, Inc. ("Peter Pan") had unlawful possession of his standard bred racehorse, named Admiral's Cove, and he sought a replevin action for the animal and brought a claim for conversion of the horse's winnings. Hall claims it was error to find his claims were barred by waiver, laches, or estoppel, or that the rules of the United States Trotting Association (USTA) preempt or supersede R.C. 1302.44 and the common law of conversion. Because we find that any claimed error was harmless, we affirm.
From the record we glean the following: Hall, who lives in Jackson, Ohio, owns standard bred racehorses that compete in events governed by the USTA. In December of 1994, with Tim Tickle acting as broker, Hall purchased Admiral's Cove from its owner in Chardon, Ohio, and sent the horse to Tickle in Utica, New York. Tickle was to train and care for the horse, and enter it in races in addition to paying all training and boarding expenses in exchange for 40% of its racing purses. In order to effectuate the arrangement, Tickle not only had possession of the animal but also had the registration and eligibility papers needed to allow him to enter the horse in USTA races.
In July of 1995, Tickle advised Hall and Richard Elliott, a horse trainer who works at Hall's Maple Valley Farm and manages much of Hall's horse-related business, that Admiral's Cove was not racing, and had been "turned out" for further training and to recover from a hoof problem. In February of 1996, however, they learned that Admiral's Cove had been racing, and was then competing under a new owner's name. Hall and Elliott claimed that Tickle entered the horse in races without their knowledge, forged Hall's name on purse checks, and that Tickle then "sold" the horse by forging Hall's signature on registration documents.
The record shows that Robert Barrett bought Admiral's Cove in December 1995, and that a registration transfer purportedly bearing Hall's signature was filed with the USTA. The horse raced in USTA events with Barrett as the named owner from December 1995 through March 1997, when it was entered in a "claiming race, " which allowed interested buyers to submit bids and purchase the horse. Peter Pan, of Beachwood, Ohio successfully claimed Admiral's Cove on March 28, 1997, and paid $20,000 to Barrett.. The horse's performance improved under the new ownership, and less than two months later Peter Pan entered Admiral's Cove in another claiming race. It then sold Admiral's Cove to Kenneth Wood and Robert Schneider for $60,000 on May 17, 1997.
Although Hall and Elliott discovered Tickle's sale of Admiral's Cove in February of 1996, they took no action to recover the horse until Peter Pan took possession over a year later. Elliott claimed the delay was due to the USTA's lack of assistance and his inability to locate Tickle but admitted he made no attempt to contact Barrett. Hall claimed he did not pursue the matter himself during this time, ostensibly due to ill health and other obligations.
In April 1997 Hall's attorney sent a letter to the USTA formally notifying the organization of Hall's contention that Admiral's Cove had been sold without his knowledge or consent. By this time Peter Pan had already claimed and bought the horse from Barrett. On May 9, 1997 Hall's attorney sent a letter to Peter Pan that asserted the fraudulent sale to Barrett and demanded the horse's return. Because this letter was returned undelivered, Peter Pan did not receive notice of the claim until May 23, 1997, after it had already sold the horse and delivered it to its new owners..
In July 1997, Hall filed this suit against Peter Pan and Wood and Schneider, both of Maryland, alleging claims of conversion and replevin. The judge dismissed the action against Schneider and Wood for lack of personal jurisdiction, and the case went forward with Peter Pan as the sole defendant.
In a motion for summary judgment, Peter Pan argued that it was not liable for conversion because it was a bona fide purchaser without notice of the original conversion, and that it did not commit a "positive tortious act" against Hall because it bought the horse in accordance with USTA regulations. Moreover, it could not respond in replevin because it no longer had possession of the horse when Hall demanded its return. That portion of the motion requesting judgment on the replevin claim was granted but judgment on the remaining claim of conversion was denied.
Peter Pan also asserted at trial that Hall failed to prove the original conversion or was estopped from claiming that Tickle sold the horse unlawfully, as Hall's failure to pursue the case immediately indicated that he had approved Tickle's sale of the horse to Barrett. Additionally, it argued that Hall should be estopped from suing Peter Pan because of the prejudice caused by Hall's own delay in seeking return of the animal. Furthermore, it challenged Hall's position, that he had been unable to contact Tickle and did not know his whereabouts because Elliott testified at trial that he had spoken with Tickle within the past six months.
After trial on March 22. 1999, the judge found in favor of Peter Pan, and Hall made an oral motion for Findings of Fact and Conclusions of law pursuant to Civ.R. 52. On April 15, 1999, the judge issued Findings of Facts and Conclusions of Law, which stated in relevant part that: 1) Hall failed to prove that Tickle converted his property; 2) Hall's claim against Peter Pan was barred by waiver, laches, or estoppel; and 3) even if Tickle wrongfully sold the horse to Barrett, Peter Pan was a bona fide purchaser who bought the horse in accordance with USTA regulations. Hall appealed from the April 15, 1999 journal entry and Peter Pan moved to dismiss the appeal as untimely.
Before addressing Hall's assignments of error, we must first address Peter Pan's motion to dismiss. It argues that dismissal is required because the original judgment entry was filed March 22, 1999, and the Civ.R. 52 motion was inadequate because not in writing, as the rule requires. It claims, therefore, that the earlier judgment entry controls, and the April 15, 1999 entry cannot revive Hall's appeal rights. We disagree.
Although Hall did not file a written motion pursuant to Civ.R. 52, there is no dispute that such a motion was made and granted because Peter Pan itself filed proposed findings of fact and conclusions of law in anticipation of the judge's entry. It did not object to the form of Hall's motion at trial, and cannot now claim that the oral motion was ineffective. We deny the motion to dismiss Hall's appeal.
Hall's first assignment of error states:
 I. THE TRIAL COURT ERRED WHEN IT HELD, AS A MATTER OF LAW, THAT A RIGHTFUL OWNER'S DELAY IN TAKING LEGAL ACTION TO RECOVER STOLEN PROPERTY BARS THE OWNER'S CLAIM AGAINST THE SUBSEQUENT PURCHASER UNDER PRINCIPLES OF WAIVER, ESTOPPEL, AND/OR LACHES.
To obtain relief on appeal, a party not only must show error, but also must show prejudice. Gries Sports Enterprises, Inc. v. Cleveland BrownsFootball Co., Inc. (1986), 26 Ohio St.3d 15, 28, 496 N.E.2d 959, 969. The judge found that Hall failed to sustain his burden of proof on the claim of conversion. Hall has not challenged this finding on appeal, and the record shows that the finder of fact could have reasonably concluded that Hall failed to prove that Tickle's sale of Admiral's Cove to Barrett was unauthorized.
Hall alleged that Tickle forged his signature on a registration transfer in order to complete the sale, but the examples of Hall's signature in the record (including the alleged forgery) all show some variation while being in large part similar to each other. Hall did not present expert evidence that the signature on the registration transfer to Barrett was forged, and other evidence casts doubt on the credibility of Hall and Elliott, the two witnesses who claimed the signature was forged and/or unauthorized. Based on the examples of Hall's signature and the suspect testimony of Hall and Elliott, the judge could find that Hall failed to prove that the signature was forged or unauthorized.
Hall and Elliott admitted that they learned the horse had been sold as early as February 1996, but took no action to reclaim it until April or May of 1997. Hall claimed throughout discovery and trial that he was unable to contact or locate Tickle, and both Hall and Elliott excuse their failure to actively seek return of the animal on their inability to locate Tickle, although Elliott admitted to having contact with Tickle within the six months prior to trial. Moreover, Hall and Elliott claimed that Tickle forged Hall's name on purse checks earned by Admiral's Cove, but had done nothing to obtain relief from Tickle on that claim nor pursue Barrett in any capacity, despite the fact that Barrett had entered the horse in several races and won purses while Admiral's Cove raced under his name.
Hall's conversion case thus depended on the credibility of the testimony that Tickle's sale to Barrett was unauthorized. "[W]here the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v. Garson (1993), 66 Ohio St.3d 610, 614,614 N.E.2d 742, 745. The judge was able to observe the witnesses and judge their credibility, and obviously concluded that Hall had not established that Tickle's sale to Barrett was wrongful. Having failed to establish the wrongfulness of that sale, Hall could not sustain a conversion claim against a subsequent purchaser.
It makes no difference, therefore, whether the facts were sufficient to sustain the affirmative defenses of waiver, laches, or estoppel. The evidence presented to support Peter Pan's claims on these issues could have been used to defeat Hall's claim that the sale to Barrett was unauthorized. Because Hall did not prove that the sale to Barrett was unauthorized, we need not decide whether his claim would be barred if he had and we reject Hall's first assignment of error.
His second assignment of error states:
 II. THE TRIAL COURT ERRED WHEN IT HELD, AS A MATTER OF LAW, THAT THE RULES OF THE UNITED STATES TROTTING ASSOCIATION SUPERCEDE ARTICLE 2 OF THE UNIFORM COMMERCIAL CODE RC§ 1302 ET SEQ.
While we agree that following USTA regulations would not insulate a purchaser of a stolen horse from liability, any claimed error would be harmless because Hall failed to prove the horse was stolen. One cannot assign error to a secondary basis for judgment unless the primary basis also has been challenged and overcome.
We agree with Hall that Peter Pan's status as a bona fide purchaser and its compliance with USTA rules in purchasing the horse in a "claiming race" does not control this claim. A purchaser obtains title only as sound as that of the seller; because a thief has no title to stolen goods,[1] all purchasers in the chain subsequent to the theft are subject to liability for conversion. Pate v. Elliott (1978),61 Ohio App.2d 144, 146, 400 N.E.2d 910,912; R.C. 1302.44 (A). Peter Pan's status as a bona fide purchaser is helpful only if Tickle was a "merchant" dealing in horses, thus allowing Peter Pan to rely on his title pursuant to R.C. 1302.44 (B). The parties, however, have not argued this issue, and we nonetheless find it as irrelevant as the estoppel issue presented in Pate, supra. Both issues were relevant only if Hall established that Tickle's sale to Barrett was unauthorized. Because the judge could have reasonably found that Hall failed to sustain his burden of proof on this issue, we need not go further. We reject this assignment of error.
It is ordered that the appellees recover from appellant its costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________ JUDGE ANNE L. KILBANE
 ANN DYKE, ADM. JUDGE CONCURS SEPARATELY;
 JAMES M. PORTER, J.. CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] "If believed, Hall's version of the facts makes Tickle a thief with void title, and not a fraudulent purchaser with "voidable" title, which would present a different case. See Creggin Group,Ltd. v. Crown Diversified Industries Corp. (1996), 113 Ohio App.3d 853,860-61, 682 N.E.2d 692, 696-97 ("voidable" title can result only from purchase transaction). Tickle at no time asserted title in the horse himself.
 CONCURRING OPINION
 CONCURRING OPINION