OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} The plaintiff-appellant, Allan Nott Enterprises (hereinafter "Nott Enterprises") appeals the judgment of the Allen County Court of Common Pleas granting the summary judgment motion of defendant-appellees, Nicholas Starr Auto (hereinafter "Starr Auto").
 {¶ 3} Prior to the trial court's ruling, both parties agreed to a written stipulation of facts. The stipulation indicates the following:
On July 8, 2002, Defendant Nicholas Starr Auto . . . sold a 2000 HondaAccord to Plaintiff Allan Nott . . . and transferred a title to [NottEnterprises]. Mr. Starr had previously purchased the vehicle from EdwardRaifsnider and received a certificate of title from him. Mr. Raifsniderhad apparently obtained title to the vehicle from the original owners,John and Debra Stone. Thereafter, Mr. Raifsnider transferred title inOhio. The check Mr. Raifsnider wrote the Stones was later determined tobe counterfeit and was dishonored.
 After receiving the car from [Starr Auto], [Nott Enterprises] sold thevehicle to Bradie Rice. The Missouri police located the currentwhereabouts of the vehicle and contacted both the Ohio Bureau of MotorVehicles (BMV) and the Columbus, Ohio, Police Department. Thereafter,pursuant to Section 4507.17 of the Ohio Revised Code, the titles were"back out" or cancelled by the Ohio BMV. The vehicle was returned to theoriginal owners. In the process of returning the vehicle to the originalowner, [Nott Enterprises] chose to cancel the transaction with Ms. Riceand provide her with a comparable vehicle. [Nott Enterprises] thenrequested [Starr Auto] [to] reimburse them for the cost of the originalvehicle. [Starr Auto] refused.
Joint Stipulation of Facts (internal citations omitted).
 {¶ 4} On July 17, 2003, Nott Enterprises filed a complaint against Starr Auto in order to recover the purchase price of the vehicle. In July 2004, both parties moved for summary judgment. On September 29, 2004, the trial court granted Starr Auto's motion for summary judgment and denied Nott Enterprises'. Nott Enterprises appeals alleging one assignment of error.
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO STARR.
 {¶ 5} The standard for review of a summary judgment is one of de novo review. Lorain Nat'l Bank v. Saratoga Apts. (1989), 61 Ohio St.3d 127, 129,572 N.E.2d 198. Thus, such a judgment will be affirmed only where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears . . . that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id.
 {¶ 6} The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" CivR. 56(B). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360, 604 N.E.2d 138. Once the moving party demonstrates that he is entitled to summary judgment, the burden then shifts to the non-moving party to show why summary judgment in favor of the moving party should not be had. See Civ.R. 56(E). In fact, "[i]f he does not so respond, summary judgment, if appropriate, shall be rendered against him." Id.
 {¶ 7} In Ohio, R.C. 1302.44(A) is the codified version of the "voidable title" doctrine. It states:
A purchaser of goods acquires all title which his transferor had or hadpower to transfer except that a purchaser of a limited interest acquiresrights only to the extent of the interest purchased. A person withvoidable title has power to transfer a good title to a good faithpurchaser for value. When goods have been delivered under a transaction ofpurchase, the purchaser has such power even though:
 (1) the transferor was deceived as to the identity of the purchaser,or
 (2) the delivery was in exchange for a check which is laterdishonored, or
(3) it was agreed that the transaction was to be a `cash sale,' or
(4) the delivery was procured through fraud punishable as larcenousunder the criminal law.
R.C. 1302.44(A)(1)-(4) (emphasis added). A purchase "includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary transaction creating an interest in property." R.C. 1301.01(FF). Finally, "only a good faith purchaser can receive good title from a transferee with voidable title." Creggin Groupv. Crown Diversified Ind. (1996), 113 Ohio App.3d 853, 860,682 N.E.2d 692. "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." R.C. 1301.01(S).
 {¶ 8} In Creggin, Gerald Duke purchased an aircraft from the Creggin Group. Creggin, 113 Ohio App.3d at 856. The contract between the two parties stated that the total purchase price for the aircraft was $63,900 plus interest; however, according to the agreement, Duke wrote the Creggin Group a $15,000 check (with monthly payments due later) and took immediate possession of the plane. Id.
 {¶ 9} Unbeknownst to the Creggin Group, Duke was in negotiations with Crown to resell the plane to them. Id. Before Crown purchased the plane, they performed a Federal Aviation Administration title search on the aircraft, which revealed that the Creggin Group owned the plane. Id. Therefore, Duke forged a bill of sale naming the Creggin Group as the seller and Duke as the buyer. Id. Believing this to be true, Crown purchased the plane from Duke. Id.
 {¶ 10} In the meantime, the $15,000 check that Duke wrote the Creggin Group was dishonored, and the Creggin Group reported the aircraft stolen. Id. The aircraft was located in Crown's possession and returned to the Creggin Group. Id. Crown initiated a replevin action against the Creggin Group claiming that they were the rightful owners of the aircraft. Id. The court agreed and stated:
R.C. 1302.44(A) does not alter the general common-law rule that wheregoods are stolen and later sold, the true owner's rights are not severedby subsequent sales. This is so, however, because if goods are stolenfrom the true owner there has been no transaction of purchase, i.e., nointent to transfer title of the goods, and R.C. 1302.44A(A) has noapplication. Here, as noted above, the transaction between Creggin andDuke can be considered a transaction of purchase regardless of Duke'slarcenous intent. That Duke subsequently showed Crown a forged bill ofsale for the plane does not change the character of the transactionbetween Creggin and Duke.
Id. at 861. Finally, the court explained, "[t]o summarize, there is evidence in the record that Duke took possession of the aircraft through a transaction of purchase with Creggin. In that case, Duke had voidable title of the aircraft and could pass along good title to a good faith purchaser for value." Id. at 862.
 {¶ 11} Following the logic outlined in Creggin, we conclude that Raifsnider obtained the vehicle through a transaction of purchase.[1]
Thus, Raifsnider's resale to Starr Auto is the equivalent to Duke's resale to Crown. Accordingly, Raifsnider had voidable title of the vehicle and could pass along good title to a good faith purchaser for value. In this case, according to the stipulated facts and the record, Starr Auto was a good faith purchaser for value; therefore, Starr Auto had good title to the vehicle. Taking it one step further, Starr Auto's sale to Nott Enterprises is a legal exchange of title (just like any other automobile sale) because Starr Auto had good title to the vehicle.
 {¶ 12} In conclusion, there are no genuine issues of material fact. Nott Enterprises had good title to the Honda Accord, and despite Nott Enterprises' gesture to return the vehicle to the Stones, there is no legal recourse for Nott Enterprises to recover from Starr Auto because R.C. 1302.44 governs. As a result, the assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
 Cupp, P.J., and Bryant, J., concur.
[1] Nott Enterprises argues that Hardware Mutual Casualty v. Gall
(1968), 15 Ohio St.2d 261, 240 N.E.2d 502 is controlling in this case. We disagree. After reading Gall, we conclude that case stands for the proposition that when a car is stolen, i.e., no transaction of purchase is present, "the provisions of the Ohio Certificate of Motor Vehicle Title Act, absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice." Id. at paragraph three of the syllabus.
The motor vehicles in Gall were stolen from their owners; however, in the instant case, the motor vehicle was obtained by a transaction of purchase between the Stones and Raifsnider. Accordingly, the events of this case fall squarely within R.C. 1302.44(A) and not within the holding enunciated in Gall.