[Cite as *Shteiwi v. Shteiwi*, 2023-Ohio-873.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| BRAHEAM SHTEIWI, EXECUTOR OF THE ESTATE OF RAKAN SHTEIWI, DECEASED, et al., | : | |
| | : | CASE NO. CA2021-11-143 |
| Appellees, | : | O P I N I O N<br>3/20/2023 |
| | : | |
| - vs - | : | |
| | : | |
| HAKMON O. SHTEIWI, et al., | : | |
| Appellant. | | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PC19-02-0007


Stagnaro, Saba & Patterson Co., L.P.A., and Jeffrey M. Nye and Paul T. Saba, for appellees.

Repper-Pagan Law, Ltd., Christopher J. Pagan, for appellant.


**BYRNE, J.**

{¶1} Plaintiffs-Appellees, Braheam Shteiwi (in his capacity as executor of the Estate of Rakan Shteiwi) and Shteiwi, Inc., filed a declaratory judgment action in the Butler County Court of Common Pleas, Probate Division. The probate court issued two decisions in that case—one concerning attorney disqualification and the other concerning ownership of shares of Shteiwi, Inc.—from which Defendant-Appellant, Hakmon Shteiwi, appeals. For

the reasons described below, we affirm the probate court's decisions.

## I. Factual and Procedural Background

{¶2}    Shteiwi, Inc., is an Ohio corporation that previously operated "The Spinning Fork," a restaurant in Fairfield, Ohio.   Per the probate court's factual findings in the proceedings below, Shteiwi, Inc. was a business run by the Shteiwi family.   The business was run in an informal manner when it came to certain legal forms and procedures relevant to this appeal.   Rakan Shteiwi was the family "patriarch" and the entrepreneurial force leading the Shteiwi family's various business interests, which included multiple restaurants in addition to "The Spinning Fork."   Rakan had a son, Braheam Shteiwi, and two brothers, Hakmon Shteiwi and Hatem Shteiwi.[1]   Hatem participated in the proceedings below but not this appeal.

{¶3}    Articles of Incorporation for Shteiwi, Inc. were filed with the Ohio Secretary of State in 1981.  However, those Articles were general in nature and failed to provide details as to offices, powers, duties, etc.   The Articles provided that the corporation would issue 750 shares but failed to identify the shareholders or the share allocations.   However, the parties agree that Rakan and Hakmon were shareholders of Shteiwi, Inc. at the time of Rakan's unexpected death in August 2016.

{¶4}    Rakan died testate.   In September 2016, Braheam offered Rakan's will to the Butler County Probate Court and applied for authority to administer Rakan's estate.   The probate court accepted the will and granted Braheam letters of authority.

{¶5}    In June 2017, the estate filed an inventory and appraisal.   Among the assets listed as being owned by the estate was "51% of the shares of Shteiwi, Inc."

---

1. Because all of the parties in this case have the same last name, we will refer to the parties by their first names for the sake of clarity.  *See Wiseman v. Wiseman*, 12th Dist. Madison No. CA2022-03-004, 2022-Ohio-3689, ¶ 1, fn.1.

{¶6} Hatem filed an exception to the inventory, disputing that the estate owned 51% of Shteiwi, Inc. Hatem claimed that he and Rakan had entered into a written agreement that "gave Hatem Shteiwi 15% of the 51% shares owned by Rakan O. Shteiwi."[2] Hatem attached a copy of a document titled "Partnership Agreement," dated January 2011. In it, Rakan and Hatem memorialized a "partnership" "under the name Shteiwi, Inc., dba The Spinning Fork." The agreement indicated that the partnership would last for two years. The agreement further indicated that Hatem would make a capital contribution of "sweat-equity" and that his "% Share" in the partnership was "15%."

{¶7} Based upon the Partnership Agreement, Hatem asked that the executor modify the inventory to reflect that Rakan's estate owned 36 percent of the shares of Shteiwi, Inc.—that is, Rakan's 51 percent share minus Hatem's claimed 15 percent share.

{¶8} In an entry titled "Case Review Notes," the probate court memorialized a discussion that occurred between the court and parties at a subsequent status hearing. The court had suggested to the parties at that hearing that the court could decide the issues raised in Hatem's exception in a declaratory judgment action and that the parties should include the corporate entity, Shteiwi, Inc., in those proceedings.

{¶9} In February 2019, Braheam, in his capacity as executor of Rakan's estate, and Shteiwi, Inc. ("the Plaintiffs") filed a complaint in the probate court against Hakmon and Hatem ("the Defendants"). The complaint contained one count for declaratory judgment. Though we will explain the proceedings further below, we pause to note—for context—that this appeal arises from the declaratory judgment action.

{¶10} The declaratory judgment complaint asked the probate court to declare that

---

[2] The language quoted here is ambiguous. But based on other arguments presented, it is obvious that Hatem meant that the agreement gave him 15 percent of the shares of Shteiwi, Inc. -- not 15 percent of the shares owned by Rakan.

the estate was the owner of 51 percent of the shares of Shteiwi, Inc. The complaint further asked the court to declare that the Partnership Agreement had no effect on the estate's percentage ownership of shares. In answering the complaint together, Hakmon and Hatem asked the court to find that Hakmon was a 49-percent owner, that Hatem was a 15-percent owner, and that Rakan's estate owned the remaining 36 percent of shares.

{¶11} In November 2019, Hakmon and Hatem moved to disqualify counsel for Braheam and Shteiwi, Inc. due to a purported conflict of interest. Hakmon and Hatem argued that Braheam and Shteiwi, Inc. had adverse interests and that the court must "disqualify a lawyer representing two parties in litigation with an active conflict." Hakmon and Hatem cited Prof.Cond.R. 1.13(a) and Prof.Cond.R. 1.7 and alleged that counsel for Braheam and Shteiwi, Inc. was violating these ethical rules in counsel's representation of the two plaintiffs.

{¶12} In October 2020, the court denied Hakmon and Hatem's motion to disqualify counsel for Braheam and Shteiwi, Inc. The court found that Hakmon and Hatem lacked standing to seek disqualification because there was no attorney-client relationship between them and counsel for Braheam and Shteiwi, Inc. Furthermore, the court found that the issues before the court in the declaratory judgment action were very narrow and that the issues that Hakmon and Hatem raised as providing the basis for potential conflicts were issues for resolution in a separate civil action pending before similar parties in the common pleas court's general division.[3]

{¶13} In May 2021, the probate court held a trial in the declaratory judgment action. The court heard testimony from Rakan's long-time accountant, who performed accounting

---

3. In October 2019, Hakmon, Hatem, and Shteiwi, Inc. filed a complaint against Braheam and Shteiwi, Inc. in the general division of the common pleas court, asserting claims of breach of fiduciary duty and declaratory judgment. The allegations primarily related to Braheam's actions of closing The Spinning Fork and opening a new restaurant in the same location, following Rakan's death. The docket of that case indicates that the court stayed that litigation pending resolution of the probate court proceedings.

for all Rakan's various restaurant businesses and did other accounting work for members of the Shteiwi family. The court also heard testimony from Hatem, Hakmon, and Braheam.

{¶14} In October 2021, the probate court issued its decision on the declaratory judgment claim. First, the court found Hatem did not own 15 percent of Shteiwi, Inc. The court found that no shares were ever conveyed to him in conjunction with the Partnership Agreement. The court further found that Hatem never took any action to have shares transferred to him after the two-year period of the partnership expired.

{¶15} Second, the court found that the best evidence of Shteiwi, Inc.'s ownership at the time of Rakan's death was a federal tax return that showed that Rakan owned 67 percent of the outstanding shares. Nonetheless, the court noted that the estate was only asking for a declaration that Rakan owed 51 percent of the company (though the court was not certain how the estate arrived at that figure). The court found that the evidence supported the estate's request to declare that it owned 51 percent of Shteiwi, Inc. The court further found that Hakmon owned the remaining 49 percent.

{¶16} Hakmon appealed and raised two assignments of error. We will address these two assignments of error out of the order presented. Notably, Hakmon did not appeal the trial court's findings regarding the percentage of shares in Shteiwi, Inc. that were owned by the estate (51%), Hakmon (49%), and Hatem (none).

## II. Law and Analysis

### A. Rights of the Parties

{¶17} Hakmon's Assignment of Error No. 2 states:

{¶18} THE PROBATE COURT ERRED BY FAILING TO FULLY DECLARE THE RIGHTS OF THE PARTIES.

{¶19} Hakmon states that the only issue resolved by the probate court was ownership of Shteiwi, Inc. He contends that the court failed to address various other issues

raised in the declaratory judgment action, specifically those concerning control and management of Shteiwi, Inc. For example, Hakmon argues that the probate court erred by failing to declare whether Braheam became a president or director of Shteiwi, Inc. by way of Rakan's death or due to Braheam's appointment as executor of the estate. Hakmon also contends that the court failed to declare whether Braheam, in his capacity as executor, required probate court approval to operate Shteiwi, Inc.'s business.

{¶20} Upon review, we do not find that the probate court erred in failing to address the various issues raised by Hakmon in this assignment of error. Braheam and Shteiwi, Inc. filed the declaratory judgment action after the probate court suggested that such a proceeding could resolve Hatem's exception to the estate's inventory. The declaratory judgment complaint asked the court to declare that the estate was the owner of 51 percent of Shteiwi, Inc. and that the Partnership Agreement did not alter or change the estate's ownership. The court's decision resolved these issues. The declaratory judgment complaint did not ask for additional declarations concerning control or management of Shteiwi, Inc. and most certainly did not ask for the specific declarations Hakmon lists in his appellate brief.

{¶21} Nonetheless, Hakmon, citing paragraph 13 of the declaratory judgment complaint, argues that "[t]he Estate also requested a declaration of its rights in the corporation," and suggests that "rights in the corporation" language includes those various issues relating to control and management of Shteiwi, Inc. which Hakmon now complains the probate court failed to address. Paragraph 13 of the complaint states:

> there is a controversy concerning the Estate[']s ownership of 51% of the shares of the Company, and the validity of the purported agreement, *and the parties' rights, duties, statuses, and legal relations arising therefrom*, and Plaintiffs therefore seek a declaratory judgment.

(Emphasis added.) Complaint at ¶ 13.

- 6 -

**{¶22}** If it was not clear from the broader context of the complaint, the use of "therefrom" in paragraph 13 indicates that the language concerning "rights, duties, statuses, and legal relations" refers to the controversy over ownership percentages and the effect of the Partnership Agreement on those percentages. Hakmon's reference to paragraph 13 to enlarge the scope of the declaratory judgment complaint is meritless.

**{¶23}** Furthermore, Hakmon never raised any issues relating to control or management of Shteiwi, Inc. in his answer. Instead, he limited his response to the issues raised in the declaratory judgment complaint concerning ownership and asked the court to declare that he was the owner of 49 percent of the shares, that Hatem was the owner of 15 percent of the shares, and the estate owned the remaining 36 percent of shares.

**{¶24}** The court did not err in failing to grant declaratory relief that was not requested in the pleadings.[4] We overrule Hakmon's Assignment of Error No. 2.

### B. Disqualification of Counsel

**{¶25}** Hakmon's Assignment of Error No. 1 states:

**{¶26}** THE PROBATE COURT ERRED BY FAILING TO DISQUALIFY COUNSEL.

**{¶27}** Hakmon contends that the probate court erred by failing to disqualify counsel for Braheam and Shteiwi, Inc. He argues that counsel for Braheam and Shteiwi, Inc. had an "active conflict" when counsel represented both Braheam and Shteiwi, Inc. in the probate court declaratory judgment action.

### 1. Standard of Review

**{¶28}** We review a decision on a motion to disqualify counsel for an abuse of discretion. *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, ¶

---

4. According to Braheam and Shteiwi, Inc., the same issues that Hakmon is arguing that the probate court should have decided are already before the common pleas court's general division in the litigation previously filed by Hakmon, Hatem, and Shteiwi, Inc.

52; *Sayyah v. Cutrell*, 143 Ohio App.3d 102, 107 (12th Dist.2001). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Goebel v. Hopkins*, 12th Dist. Warren No. CA2022-06-042, 2022-Ohio-4718, ¶ 15.

## 2. Analysis

**{¶29}** Hakmon's disqualification argument is based on two of the Rules of Professional Conduct: Prof.Cond.R. 1.13 and 1.7.

**{¶30}** Prof.Cond.R.1.13(a) provides in part:

> A lawyer employed or retained by an organization represents the organization acting through its constituents. A lawyer employed or retained by an organization owes allegiance to the organization and not to any constituent or other person connected with the organization. The constituents of an organization include its owners and its duly authorized officers, directors, trustees, and employees.

In other words, Prof.Cond.R.1.13(a) establishes that when a lawyer represents a corporation (like Shteiwi, Inc.) the lawyer represents the corporation alone, and does not automatically, by that representation, also represent the corporation's constituents, including its officers and owners (like the estate, Hakmon and, allegedly, Hatem).

**{¶31}** The implications of this principle are explained in Prof.Cond.R.1.13(b), which provides that:

> If a lawyer for an organization knows or reasonably should know that its constituent's action, intended action, or refusal to act (1) violates a legal obligation to the organization, or (2) is a violation of law that reasonably might be imputed to the organization and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is necessary in the best interest of the organization.* * *.

In other words, a lawyer who represents an organization may have a conflict in also representing a constituent of the organization if the constituent violates his or her obligations to the organization or takes action that harms the organization in some "substantial" way. This is the basis for Hakmon's disqualification argument. Hakmon argues that Braheam,

acting as executor for the estate, violated a duty to Shteiwi, Inc. and caused it substantial injury when Braheam "harmed the corporation by locking its doors, shuttering the restaurant, and seizing its assets for Braheam's personal use."

{¶32} But the rules described above do not mean that a lawyer may never simultaneously represent two clients who have a potential or actual conflict. Prof.Cond.R.1.7(b)(2) provides that a lawyer may undertake such representation provided the lawyer takes certain precautions, including but not limited to obtaining "informed consent, confirmed in writing."

{¶33} Hakmon argues that because there was a conflict of interest between Braheam and Shteiwi, Inc., and because there was no evidence presented to the probate court that a conflict waiver was obtained, the probate court erred when it denied Hakmon and Hatem's motion to disqualify counsel for Braheam and Shteiwi, Inc.

{¶34} Though questions of lawyer discipline are reserved for the Ohio Board of Professional Conduct and, ultimately, the Ohio Supreme Court, a trial court nevertheless has the inherent power to regulate the practice before it, protect the integrity of the proceedings, and see to the ethical conduct of attorneys. *Mentor Lagoons Inc. v. Rubin,* 31 Ohio St.3d 256, 259 (1987), citing *Royal Indemn. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 33-34 (1986). "This includes the inherent authority of dismissal or disqualification from a case if an attorney cannot, or will not, comply with [Ohio's rules governing ethics and professionalism in the practice of law] when representing a client." *Id.*

{¶35} We have held that "[a]n attorney should not be disqualified *solely* upon an allegation of a conflict of interest; even where the requested disqualification is based upon ethical considerations, the moving party still must demonstrate that disqualification is necessary." (Emphasis sic.) *Creggin Group, Ltd. v. Crown Diversified Industries Corp.*, 113 Ohio App.3d 853, 858 (12th Dist.1996). We further explained that "[e]ven if an attorney's

continued representation would violate one of the Canons of the Code of Professional Responsibility, counsel should not be disqualified unless the attorney's conduct poses a significant risk of tainting the trial." *Id. Accord Fifth Third Bank v. Q.W.V. Properties, L.L.C.*, 12th Dist. Butler No. CA2010-09-245, 2011-Ohio-4341, ¶ 41-42. While the Rules of Professional Conduct have replaced the Code of Professional Responsibility, we are aware of no authority suggesting that the adoption of the Rules of Professional Conduct somehow eliminates the requirement that a party seeking disqualification of counsel show a significant risk that the alleged conflict will taint the trial.

{¶36} Hakmon and Hatem failed to convince the probate court that the alleged conflict between Braheam as executor of the estate and Shteiwi, Inc. posed a significant risk of tainting the trial. In fact, Hakmon has not persuasively articulated how the alleged conflict and ethical violation prejudiced him in the declaratory judgment action. Hakmon asked that the court declare him 49 percent owner of Shteiwi, Inc. and the probate court granted that request. Nor does Hakmon articulate how the alleged conflict contributed to any other error in the probate court's decision.

{¶37} Critically, Hakmon on appeal failed to bring any assignment of error with respect to the probate court's decision concerning the parties' respective percentage ownership of shares. As a result, Hakmon effectively waived any argument that counsel's simultaneous representation of Braheam and Shteiwi, Inc. ran the risk of tainting the trial, or that he suffered prejudice as a result of the probate court's refusal to disqualify counsel for Braheam and Shteiwi, Inc. In other words, even if we were to find that the probate court erred in denying disqualification, such a finding would not require reversal of the probate

court's decision.[5]

**{¶38}** We overrule Hakmon's Assignment of Error No. 1.

### III. Conclusion

**{¶39}** We have overruled all of the assignments of error presented.

**{¶40}** Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.

---

5. Because Hakmon's failure to assign error with respect to the probate court's decision with regard to the parties' ownership of shares in Shteiwi, Inc. prevents him from establishing prejudice with respect to the probate court's denial of his motion for disqualification, we need not consider other arguments discussed in the parties' briefs, such as whether Hakmon and Hatem had standing to seek disqualification and whether the three-part test set forth in *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882, 889 (6th Cir.1990), remains good law and should have been applied by the probate court.